FISH LAKE RESORT CO. v. INDUSTRIAL COMMIS-
SION OF UTAH et al.

No. 4733.   Decided February 20, 1929.   (275 P. 580.)

*Wilson & Barnes,* of Salt Lake City, for plaintiff.

*George P. Parker,* Atty. Gen., and *F. A. Trottier,* Asst. Atty. Gen., for defendants.

FOLLAND, J.

The Industrial Commission awarded compensation to Mrs. Milo Busk for herself and minor children because of the

death of her husband by drowning in Fish Lake, Sevier county, Utah, after finding, with other facts, that her husband, Milo Busk, was employed by the Fish Lake Resort Company, a corporation, and was engaged in the employer's business of fishing on the lake at the time of the accident which resulted in his death.

The plaintiff, a corporation managed by Charles Skougaard, its principal owner, maintains and operates a summer resort on Fish Lake. It employs three or more workmen and is subject to the Workmen's Compensation Law, but at the time of the accident had failed to comply with section 3114, Comp. Laws Utah 1917, and hence is subject to the provisions of sections 3129 and 3130, Comp. Laws Utah 1917.

On Sunday, July 17, 1927, about noon, Busk and another employe of the company, Leonard Baker, were out on Fish Lake in a motorboat belonging to the company and were engaged in fishing. While operating the boat, Busk attempted to make a short turn; the boat capsized and precipitated both occupants into the water. Baker rescued himself, but Busk sank and drowned. His body was recovered four days later.

Several questions are raised in the briefs, but the only one we need consider is whether there is substantial, legal, and competent evidence to support the finding that the accident resulting in Busk's death occurred in the course of the employment. The findings of fact made by the Industrial Commission, and which are assailed, are the following:

"That the said Milo Busk was, on July 17, 1927, the date of his accident and death herein complained of, and prior thereto, in the employment of the defendant company at its pleasure resort at Fish Lake, Sevier county, Utah, working seven days per week and was being paid a wage of $90 per month cash, etc.

"That his duties were tending the boathouse, repairing and hiring out boats, repairing cabins and acting in miscellaneous capacities as general utility man, or 'handy man,' around said resort, doing such things as were required of him by defendant in the interest of pro-

moting the business of said company, in making its resort attractive, etc.

"That during the time intervening between the end of the forenoon shift at the boathouse and the beginning of the evening shift thereat, as aforesaid, decedent performed miscellaneous labor for defendant, among which was included the catching of fish for service at defendant's hotel, excepting such part of such intervening time as he devoted to sleep.

"That on Sunday, July 17, 1927, * * * the said decedent, along with one Leonard Baker, another employee, in keeping with his usual miscellaneous duties attending his said employment, went in a motorboat belonging to his said employer out upon said lake to fish, for the purpose of obtaining fish for service to the guests of said hotel owned and operated by said company, as aforesaid—it being common knowledge among all who stop at said hotel or visit said resort that a fresh trout dinner is served almost every day during the fishing season—and while so engaged the said boat was capsized, and said decedent was thus and thereby precipitated into the waters of said lake, and as a consequence thereof he met his death through being submerged by the said water; that said accidental death arose out of or in the course of the employment of the said decedent by the said defendant."

This court will examine into the evidence only for the purpose of determining whether there is any substantial competent evidence to support these findings.

It is contended by plaintiff that Busk was fishing for his own pleasure and on his own time. The evidence is substantially as follows: Busk had been continuously in the employ of the company for about three months as a "handy man." He made repairs to boats, did some carpenter work, attended the boathouse, and did other odd jobs around the resort, as he was requested to do by the management. On the Sunday in question he had worked the morning shift, commencing about 4:00 a. m., at the boathouse, and upon being relieved by Dan Baker, who came on duty at about 9 a. m., Busk and Leonard Baker took a motorboat, with some of their own fishing tackle and some tackle belonging to the company, for the purpose of fishing on the lake.

Mrs. Busk testified that her home was at Richfield, Utah, where she lived with her husband; that he made occasional trips from Fish Lake to Richfield; that she asked him to bring fish for the family, and he said: "I can't bring fish down. I am working for Mr. Skougaard and fish for him." And again: "I go fishing for the hotel."

Leonard Baker, who was with Busk at the time the boat capsized, stated that on this particular morning he and Busk "decided to go fishing, * * * just to fish because there was nothing to do; not much business; nothing much to do, so we decided to go fishing." He was then asked the following question: "In case you caught any fish, what were you going to do with the fish?" And he answered: "We didn't decide on any steps of what we would do with the fish. If I had come back with fish, I would have taken them to the hotel." He also stated that no one had given him any instructions to fish for the hotel on that day.

Dan Baker, the boathouseman, was asked the following question: "Q. I will ask you, Mr. Baker, if at any times when you have been fishing, if you have taken fish to the hotel? A. Yes; any surplus fish I have had I have been glad to give to the hotel at any time." He testified he had given Busk no orders to fish for the hotel, and that he had no right to give such an order, and that he did not remember having stated to the witnesses Jensen and Christensen the declarations claimed by them to have been made by him.

Ralph Christensen testified to a conversation with Dan Baker, two days after the accident, in which he asked, referring to Busk and Leonard Baker and the happening of the accident, "Was they fishing on their own time or for the resort?" to which he said Baker replied, "No; they were fishing for the resort company."

Dan Jensen, who was present at the time of the conversation referred to by Christensen, testified that Dan Baker answered: "He said they went to fish for the house, and they went out and didn't want to come in skunked, and they stayed out until the lake was rough, and they got one little

one and was coming in, and as they were coming in Leonard was cleaning the fish and Milo running the motor, and they capsized the boat."

Charles Skougaard, manager of the resort, testified it was no part of the duty of Busk to fish for the hotel; that on Saturday, previous to the Sunday of the accident, Busk had asked for a three-day leave of absence to prepare a cabin for his family and to go to Richfield to bring them up to the resort; that this leave of absence had been granted.

Mrs. Skougaard, secretary of the company, testified that Busk called upon her for a key to the cabin, and it was given to him; that at this time he told her he was to have a three-day lay-off, to fix the cabin and bring his family to the resort.

It will be noted that all of the testimony to the effect that the deceased was actually engaged in the business of fishing for the resort company at the time of the accident is hearsay. It is urged, however, by defendant, that the declaration, testified as having been made by Dan Baker, that Busk and his companion were fishing for the resort company, was made by him "as agent for the plaintiff company, and his statement was an admission against interest of the resort company."

The evidence shows that Dan Baker was an employe of the company, had charge of the boathouse, and rented boats to whomsoever might apply for them. It does not appear that the declarations made by him were within the scope of his agency, if he be regarded as an agent; nor were they made in the course of his employment, nor in the performance of any act within the scope of his authority. They were no part of the res gestae, either of the accident causing Busk's death, or of any transaction Baker was then engaged in on behalf of his principal.

Under the settled law in this state, such statements are incompetent and cannot bind the principal. In the case of

*Meyers* v. *San Pedro, L. A. & S. L. R. Co.*, 36 Utah 307, 104 P. 736, 21 Ann. Cas. 1229, this court, speaking through Chief Justice Straup, decided:

"But, in the absence of some direct or special authority to make the admission, the law does not charge the principal with the declarations or admissions of the agent, unless the 'declarations or statements are made during the transaction of business by the agent for the principal, and in relation to such business and while within the scope of the agency; in other words, unless the representations may be deemed a part of the res gestae.' "

The same principle is announced in 22 C. J. 386, as follows:

"Admissions of an agent of a private corporation, when relevant to the issues, are competent against the corporation, provided, but not unless, they are within the scope of the powers of the declarant, were made in connection with the performance of his duties, and are statements of fact rather than mere expressions of opinion."

We are of the opinion that all of the testimony to the effect that Busk was within the scope of his employment while engaged in the fishing enterprise on the day of the accident rests upon hearsay or incompetent evidence. It is well settled that a material finding of fact, based entirely upon hearsay or incompetent evidence, cannot stand and will not support an award. *Garfield Smelting Co.* v. *Industrial Comm.*, 53 Utah 133, 178 P. 57; *Globe Grain & Milling Co.* v. *Industrial Comm.*, 57 Utah 192, 193 P. 642; *Cudahy Packing Co.* v. *Brown*, 61 Utah 29, 210 P. 608.

THE AWARD IS ANNULLED.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.