UTAH DELAWARE MIN. CO. v. INDUSTRIAL COMMISSION et al.

No. 4959.   Decided June 11, 1930.   (289 P. 94.)

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for plaintiff.

*Geo. P. Parker,* Attorney General, and *M. Logan Rich,* Deputy Attorney General, for defendants.

STRAUP, J.

The plaintiff, the Utah Delaware Mining Company, seeks a review of proceedings had before the Industrial Commission in which compensation was awarded to one of its employees for alleged injuries sustained by him in the course of his employment. It is charged that the evidence is insufficient to sustain the award, especially in the particulars that the disabilities complained of and for which compensation was awarded were the result of the alleged injury; that the application for compensation was not filed until more than one year after the accident and hence was barred by the statute of limitations; and that the commission after a hearing and making findings changed them without notice to the plaintiff and without giving it an opportunity to be heard with respect thereto.

It is admitted that the employee, Plumlee, as a miner was in the employ of the mining company, and while engaged at

his work in its mine, a rock and cave-in, on January 16, 1927, fell from the top of a stope and struck him on his back and on the right side resulting in injuries. The injury and as described by the attending physician in a report made by him, and of which there is no dispute, is a "fracture of right transverse process 4th lumbar vertebra. Moderate amount of hypertrophi arthritis thruout spine. Extensive abrasions and contusions of whole lumbar region."

Under our Workmen's Compensation Act (Comp. Laws Utah 1917, § 3095), there is created what is known as the state insurance fund for the purpose of insuring employers by the state against liability for compensation under the act, which fund is applicable to the payment of loss sustained on account of such insurance and to the payment of compensation. The state treasurer is the custodian of the fund which is administered by the Industrial Commission, who is given authority to make contracts of insurance relating to the state insurance fund and as by the act provided. *Ban & Kariya Co. et al.* v. *Industrial Commission,* 67 Utah 301, 247 P. 490, we held that the insurance fund is not itself a corporation nor any other legal entity; that it is but an arm or department of the machinery set up by the Workmen's Compensation Act, the administration of which is under the Industrial Commission and under its control and management. The mining company was insured by and through the state insurance fund under and in pursuance of a contract made by it with the Industrial Commission or under its discretion and authority.

The attending physician made his report of the accident and injury on a printed blank furnished for that purpose to "The State Insurance Fund (The Industrial Commission of Utah), Surgical Report," on January 28, 1927, describing the injury as heretofore stated. Likewise the mining company on the same day, January 28, 1927, also made a report, on a printed blank furnished for such purpose, to "The Industrial Commission of Utah—First Report of Injury," of

the accident and injury and as described by the physician in his report, stating the probable duration of the disability to be two months and stating other matters required to be stated in such a report. That report was received by the state insurance fund January 29, 1927. On February 11, 1927, the employee, on a printed blank furnished for the purpose, made a written report signed by him, to "The State Insurance Fund of Utah, The Industrial Commission, Workman's Claim for Compensation," in which all necessary statements are made showing the name of the employer, the name of the employee, the place and time of injury, the manner in which it was sustained, the part of the body injured—on the "back, hip, leg" from "a cave-in while I was at work"—the name of the attending physician, the employment by the day at seven days a week at the rate of $5.25 a day, and that, "in accordance with above facts claim is hereby made for the benefits due under the compensation act." Such report was received by the state insurance fund February 11, 1927. On February 15, 1927, on a printed blank furnished for the purpose, the heading of which is, "Employer's Supplemental or Final Report of Injury, The Industrial Commission of Utah," the mining company made a further written report, giving the name of the employer, the name of the employee, the time and place of injury, and stating that the employee was able to return to work February 14, 1927, which report was received by the state insurance fund February 15, 1927. The mining company on March 29, 1927, filed a further "Employer's Supplemental or Final Report of Injury, The State Insurance Fund, The Industrial Commission of Utah," in which it again reported the date of the accident, the name of the employee, that he was absent 31 days, was paid compensation of $64, and that the services of the physician and hospital expenses also had been paid amounting to $73.50.

On June 19, 1929, the employee on a printed blank furnished for such purpose, filed with the Industrial Commission a regular written "Application for Adjustment of

Claim," in which the time, place, and cause of the injury were stated, that he was "Hurt in back and right side over kidney" by a cave-in, and in which all necessary jurisdictional facts entitling him to compensation were stated, and, among other things, "I have suffered with pain and soreness in my right side and back since I was hurt and it never hurt me before I was hurt and I have not been well or able to work steady, been going to the Dr. off and on since Jan. 16, 1927," and that, "There is a question with the Dr. if this sickness is from the injury or not." In his application he made a claim of compensation of $16 a week from January 16, 1927, until he was able to work. Written notice was given the mining company and the claims adjuster of the state insurance fund of the filing of the application and a copy thereof to each and that the hearing was set for July 1, 1929. On that day the applicant appeared in person without counsel, the claims adjuster for the state insurance fund, but no answer or appearance of any kind was made by the mining company. Testimony was given by the applicant, his wife, and his father-in-law, and by the attending physician. A report of the mining company also was put in evidence showing the number of days the applicant worked for the mining company after the injury from February, 1927, to April 13, 1929, and the number of days during such period he was absent. At the conclusion of the evidence, the commission, on August 9, 1929, made findings and conclusions and ordered an award of compensation to be paid by the mining company and the state insurance fund of $16 a week during "the temporary total disability" of the applicant and the payment of medical and hospital expenses. Notice was given of the decision to the mining company and the state insurance fund. The mining company in due time and on August 27, 1929, filed a petition with the commission for a rehearing, on the ground of insufficiency of the evidence to support the award and that the findings as made were contrary to the evidence. On September 6, 1929, the commission granted a rehearing "to afford the commission

an opportunity to revise its findings to conform to the evidence heretofore presented but not for the purpose of introducing any further or additional testimony." In the petition for rehearing no ground or request was stated to give further or additional evidence. The matter of the rehearing was set for September 14, 1929, and all parties notified. At that time the applicant again appeared in person without counsel, the claims adjuster for the insurance fund, and counsel for the mining company. At that hearing the commission stated the prior proceedings had in the cause, and, among other things, stated that the commission was of the opinion it had failed to make the findings sufficiently definite and had granted a rehearing in order that the commission on the evidence theretofore adduced might make the findings more specific and certain. Apparently no objection was made on behalf of the claims adjuster for the state insurance fund. The mining company did not even then offer or ask to give further or additional evidence, nor did it make any objection to the contemplated action to be taken by the commission, except counsel for the mining company asked that the record show that the application for compensation filed with the industrial commission "bears the file mark of June 19, 1929, which was more than a year after the time of the accident," and then for the first time served and filed or in any manner interposed a plea or claim of the statute of limitations. In reply to the plea, the commission stated:

"Let the record show that under date of February 11, 1927, The Industrial Commission of Utah received an application signed by Lee Plumlee (the applicant) making claim for workman's compensation and containing the date of the injury and all necessary data required by said application.

"Mr. Van Cott (Counsel for the mining company): I would like to have the record show that that can only be considered an application by considering the State Insurance Fund and the Industrial Commission as one and the same thing.

"Com. Knerr: The Supreme Court has heretofore held that the State Insurance Fund and the Industrial Commission are one and the same thing." With such observations the plea was permitted to

be filed. The commission then asked counsel for the mining company if he was "willing to submit the case on the record." Counsel replied:

"I would not be willing to do that, because I don't think we have been granted a rehearing. I think the order is like handing it out with one hand and taking it back with the other, so I would not want anything in the record that we are willing to submit it.

"Com. Knerr: In your application for a rehearing you didn't state that you desired to introduce additional evidence.

"Mr. Van Cott: I don't think we needed to.

"Com. Knerr: The case will be submitted."

Counsel for the mining company did not even then offer or ask to introduce additional evidence or make any claim that he had further or additional evidence which he desired to offer.

The commission thereupon on September 23, 1929, made and filed an "Amended Decision" in which all of the prior proceedings in the cause are stated, made revised and additional findings and conclusions and an order of compensation substantially as theretofore made requiring the mining company and the state insurance fund to pay the applicant the sum of $544 for compensation from February 17, 1927, to April 14, 1929, covering the period or days between said dates that the applicant was unable to work, and $16 a week from and after April 19, 1929, until the further order of the commission or until the applicant was able to resume employment, required the mining company and the state insurance fund to pay all medical and surgical expenses and hospital treatment incurred and furnished, and which are necessary to be furnished in the future, in consequence of the injury, and further ordered that the commission "retain jurisdiction of the case until all matters and things are disposed of according to law." The new and additional findings as made are full and comprehensive and are definite and specific as to all matters required to be found and to support the award. The commission found against the plea of the statute of limitations on the ground of waiver and on the further ground that the prior filings with the state in-

surance fund were in legal effect filings with the commission.

We shall refer to the evidence only in the particulars of which complaint is made. The commission found that from February 17, 1927, to April 14, 1929, there were 238 days in which the applicant, on account of his injuries, was unable to work and for such period ordered compensation to be paid in the sum of $544. That finding is complained of. There is not much dispute that the applicant did not work for such number of days during such period. That he did not is shown by the report of the mining company, and so in substance was testified to by the applicant. The contention is that his failure to work for such number of days during such period was not sufficiently shown to be due to his injuries or to any disability resulting from the accident. That brings us to further findings complained of. The commission, among other things, found:

Finding No. 4. "On the 16th day of January, 1927, the said Lee Plumlee, while regularly employed as an underground miner by the said Utah Delaware Mining Company, was struck by falling rock, sustaining fracture of the right transverse process fourth lumbar vertebra, and sustained extensive abrasions and contusions over the entire lumbar region and was severely injured on the right side near the kidney, and suffered pain on the right side from the date of injury up to the time of the hearing held July 15th, 1929."

Finding No. 6. "The applicant suffered injury in the region of his right kidney as a result of the accident sustained on the 16th day of January, 1927; said injury never healed but grew worse from the date of the accident until finally he was obliged to discontinue his employment on the 14th day of April, 1929, and has been totally incapacitated since as a result of the injury sustained on January 16th, 1927, while employed by the Utah Delaware Mining Company, as aforesaid, and his present total disability is due to the said injury then and there sustained."

Finding No. 7. "On the date of the hearing, July 15th, 1929, the applicant was in need of medical care and attention and was totally disabled and will in all probability continue to be so totally disabled for some time; the applicant is still in a very serious condition as a result of the said injury sustained on January 16th, 1927, while employed by the Utah Delaware Mining Company."

The particular complaint of such findings is that the evidence does not show that the physicial and disabled condition of the applicant at the time of the hearing was the result of the injury sustained by him at the time of the accident. That prior to the injury the applicant was a strong, healthy, and able-bodied man, about the age of forty-five years, is not disputed. That he sustained an injury to his back and in the region of the kidney by rock and a cave-in falling on him, also, is not disputed. At the request of the commission the attending physician on June 3, 1929, submitted to it the following report concerning the injury and treatment of the applicant:

"Rock fell from top of stope on patient.

"Diagnosis—Fracture of right transverse process of the fourth lumbar vertebra. Moderate amount of hypertrophic arthritis throughout spine. Extensive abrasion and contusion of whole lumbar region.

"Disability estimation—2 months.

"Because of this injury this patient was disabled in the hospital from Jan. 16th to Jan. 30th, 1927. He was released to work Feb. 13th, 1927.

"A survey of our records, since date of above mentioned injury, indicate no complaint until Nov. 6th, 1928, at which time Mr. Plumlee re-entered the hospital complaining of pain over his right kidney. He remained in the hospital until Dec. 17th, 1928, during which time a cystocope was passed on two different occasions. These examinations disclosed a very abnormally functioning right kidney. Search of records of Jan. 1927 show no evidence of kidney injury at that time.

"Following the hospitalization of Dec. 22, 1928 to Jan 2, 1929, this man returned to work and worked until about April 14th when he again entered the hospital.

"The patient has run an intermittent temperature since re-entering the hospital. A check up cystoscopy confirms the report of previous cystoscopic examination. Examination during the last period of hospitalization indicated that this patient also had a gall bladder infection.

"On May 3rd a markedly infected gall bladder was removed. A chronically infected appendix was also removed. Numerous adhesions about gall bladder and appendix. Examination of kidney, thru

abdomen indicated an enlarged kidney, firmer than normal, and rather firmly fixed.

"We feel, with these findings, that it will be advisable to remove kidney. The operation has been set for Friday morning, June 7th, 7. A. M."

The report without objection was put in evidence. The physician further in substance testified that the applicant on September 19 to October 1, 1928, came to the hospital with an infection of the leg; that he had boils on his leg. On November 6 to December 17, 1928, the applicant again was taken to the hospital, at which time he complained of a good deal of pain over his right kidney; that a cystoscopic examination showed the applicant had no function in his right kidney; that he was released for five days and again entered the hospital January 2, 1929; that between November 6 and December 17, 1928, the applicant had his teeth and tonsils removed; that the period of disability from November 6 to January 2, was almost one continuous period of hospitalization with the exception of four or five days when the applicant went home; that the applicant was treated for an infection of the bladder and had numerous office visits between January 2 and April 5, 1929; that on February 8, 1929, the applicant returned to work and had a short period of working, he did not remember how long; that he told the applicant and his wife that the kidney was not functioning and probably would have to be removed, but they did not wish to have it removed unless it was absolutely necessary, and that there was not enough evidence at the time to persuade them that the kidney should be removed, and so allowed the applicant to return to work; that the applicant was readmitted to the hospital April 14, 1929, and between that time and July 3, 1929, he removed the applicant's gall bladder and appendix, which were infected with a lot of adhesions around the gall bladder and appendix, and that an examination of the kidney through the abdomen indicated an enlarged kidney and when later an operation was performed to remove the kidney a large perinephritic abscess

around the kidney was found which was drained but the kidney not removed.

When asked by the chairman of the commission whether, by taking into consideration the history of the case, the injuries, the operations had, and his observations of the applicant, he had an opinion as to whether the injury at the time of the accident had anything to do with the present condition of the applicant, the physician answered that there was no direct association between the applicant's injury and his present condition and that he did not see any relation to or connection between the two; that the applicant's condition apparently came into its acuteness after a period of almost eighteen months, during which time he was suffering pain without evidence of an infection or enough evidence of an infection to draw attention thereto, and from the time the infection first made itself manifest he practically was under constant care. When further asked if, at the operation and when he drained the kidney, there was any evidence of the kidney "having been damaged," he answered: "That is entirely impossible to tell. I could not even answer that because I did not see the kidney, I only felt it. I didn't deliver the kidney."

The applicant and his wife in substance testified that after the applicant left the hospital at the first time and went back to work, he complained of pain in the right side and in his leg and stated that it felt as though "there was water in there," and asked the doctor about putting on tight bandages, but the doctor advised against it; that about every night when the applicant came home from the mine his wife put hot packs and liniment on his back and at times he vomited green matter and suffered much pain; that when he went to work he walked with a stick; that he had lost his appetite and many times brought his lunch home uneaten, and that he gradually grew worse; that before the kidney was operated on his leg was drawn up, and since the operation it has straightened out; that he took medicine and

tablets prescribed by the doctor and that the doctor said "he would let him work to test the kidney out"; that the applicant worked pretty steady but at times was required to lay off because he was unable to work, and when he first went to work he was just able to get around. They further testified that the applicant prior to the accident at no time had any trouble with his kidneys; that he had no prior sickness of any kind and was healthy and able-bodied; and that since the accident he had been ill and complained all the time of and had pain in his back, side and leg.

Notwithstanding the opinion expressed by the attending physician—it was but an opinion—that he saw no connection between the present disabilties of the applicant and the injuries sustained by him at the time of the accident, nevertheless the commission had before it sufficient evidence to justify a finding that the disabilities were attributable to the accident. The nature and extent of the injuries occasioned by the accident and the parts of the body injured and affected, and the physical condition of the applicant thereafter from the time of the accident until the hearing, were all fully described and laid before the commission. Whether the present disabilities were or were not attributable to the injuries received at the time of the accident, constituted the ultimate fact or question to be determined by the commission. They were not bound to accept a mere opinion of an expert on such an ultimate question, unless such was the only reasonable conclusion to reach in the premises. It is urged that the infectious condition did not manifest itself until more than a year after the accident and hence could not be attributable to the injuries then received. But that is not so conclusively shown as not to justify a contrary finding. Just when the infectious condition first started is not at all clear. The applicant was in a bad condition when the physician as he testified saw and examined the applicant more than a year after the accident. As early as November 6, 1928, it was found the applicant had a "very

abnormal functioning of the right kidney." That at the time of the accident the applicant was injured rather severely in the region of the kidney is not disputed. No opinion was advanced, and no reasons given by the physician, that if the diseased and infectious condition of the kidney and of the gall bladder and the adhesions were not attributable to the injury received at the time of the accident, to what likely or probable cause or causes they were attributable. The applicant, prior to the accident, having been healthy and able-bodied and having no prior kidney or bladder trouble and no sickness of any kind, and receiving a rather severe injury in the region of the kidney, together with evidence that he thereafter almost continually suffered and complained of pain in that region, and not anything to show that the diseased and infectious conditions were attributable to another cause, the natural cause to which they may be attributable is the injury received at the time of the accident. We thus think the evidence sufficient to support the findings in such respect.

Now as to the statute of limitations (Comp. Laws 1917, § 6468) : The time prescribed in which an application may be made for compensation is one year. Within that time—within about a month after the accident—the applicant filed an application setting forth all necessary and jurisdictional facts with the state insurance fund, so called, and made claim of compensation. The application was addressed to both the state insurance fund and to the industrial commission. The point made is that was not a filing with the Industrial Commission itself. But, as has been seen, the state insurance fund is but an arm or department of the Industrial Commission. Because of that the commission regarded the filing with the same effect as though it had been directly filed with the commission or with its secretary or clerk. The applicant filed his claim with the same department of the Industrial Commission as the mining company filed its reports on the same subject.

The claims adjuster is one appointed by the Industrial Commission and in the discharge of his duties is under the control and direction of the commission. He is just as much its agent and representative as is its clerk or secretary. What he does in the course of his employment is just as much the act of the commission as though directly performed by the commission itself. On the printed heading of the blanks filled out the claim was presented to both "the state insurance fund, and the industrial commission." We thus are of the opinion that the claim filed as it was with the state insurance fund is in legal effect a claim filed with the commission. In such view there was a proper and sufficient claim filed for compensation within the statutory period of limitations conferring jurisdiction on the commission to deal with and adjust the claim and to give the commission a continuing jurisdiction over the matter. *Continental Casualty Co.* v. *Industrial Commission* (Utah) 260 P. 279.

But further as to this: The applicant admittedly filed a regular and formal claim before the commission whereby compensation was claimed at $16 a week from the time of the injury and until the employee was able to resume work, or until the further order of the commission. The mining company was given notice of that and was served with a copy of the demanded claim or petition and was given notice of the time of the hearing thereof. It failed to appear or answer the petition in any particular. An award was made substantially as prayed for. On application on behalf of the mining company a rehearing was granted to revise the findings on the evidence theretofore adduced. At such rehearing the mining company appeared and then for the first time interposed a plea of the statute of limitations. The general rule is that a party can rely on the statute of limitations only where he pleads it and ordinarily is required to interpose the plea at his first opportunity. Generally, new trials or rehearings are not granted to give a defeated party an opportunity to interpose the

statute of limitations where he theretofore and before an adjudication on merits had full opportunity to interpose it. Though under some circumstances, where a plea of the statute of limitations is not interposed at the property stage of the proceedings, permission in the exercise of a sound discretion may be given to file it at a later stage, yet not anything is here made to appear to invoke such discretion. We think the finding made by the commission disallowing the plea was justified.

The further point made, that the findings were changed without notice to the mining company, is not supported by the record. As already seen, the commission on the company's application granted a rehearing, for the purpose of revising the findings and making them more definite, fixed a time for such hearing, and notified the company. At the appointed time the company appeared. It did not request nor offer to give any further or additional evidence. The commission indicated that on the evidence adduced it would revise its findings and make them more definite. The company thus was given an opportunity to be heard on the contemplated action. It made but one claim or request, and that was to interpose the statute of limitations. The claim now made that the findings were changed without notice is thus not well founded.

The award made by the commission is therefore affirmed, with costs to the applicant.

CHERRY, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.