## CHIEF CONSOL. MIN. CO. et al. v. INDUSTRIAL COMMISSION et al.

No. 5134. Decided November 19, 1931. (4P [2d] 1083.)

*Badger, Rich & Rich,* of Salt Lake City, for plaintiffs.

*Geo. P. Parker,* Atty. Gen., and *M. Logan Rich,* Deputy Atty. Gen., for defendants.

FOLLAND, J.

This is a proceeding to review an award of the Industrial Commission of November 24, 1930, wherein John Ferguson was awarded compensation at the rate of $15.08 per week until death upon a finding of total and permanent disability resulting from injuries sustained by him because of an accident March 1, 1924, while in the employ of the Chief Consolidated Mining Company. The award is assailed by plaintiff upon three grounds:

(1) "That the arthritis or rheumatism with which the applicant is afflicted was not caused or produced by his injuries which he sustained on or about March 1, 1924; that there is no substantial evidence in the record that said injuries on March 1, 1924, were the proximate cause of arthritis or rheumatism of the applicant; that the decision of the Industrial Commission of November 24, 1930, is based upon conjecture and speculation."

(2) "That it does not appear from the record that the applicant is permanently and totally disabled and incapacitated."

(3) "That the claim of the applicant is barred by the provisions of Comp. Laws Utah 1917, § 6468, in that no application was filed for compensation within a year after the date of the accident, it appearing that the first and only application for compensation filed with the Commission was more than six years after the date of the injury. The application for compensation was filed March 14, 1930.

We shall discuss the last-mentioned objection first. The record discloses that the employer and insurance carrier, without action by the Industrial Commission, assumed liability as for temporary total disability and paid compensation to the employee from the time of the accident until February 28, 1930. The petition of the employee filed with the Industrial Commission asking for compensation as for permanent total disability was filed March 14, 1930. The question of the application of the statute of limitations to a situation such as is presented here has never been definitely decided in this jurisdiction.

It has been assumed, and the practice has followed that assumption, that the applicant is within time if he files his petition with the Industrial Commission within a year after last payment of compensation in cases such as this where liability has been voluntarily recognized by the employer or insurance carrier and payment of compensation made to the injured employee. *Brown, Terry & Woodruff Co.* v. *Industrial Commission* (Utah) 300 P. 945; *Utah Apex Mining Co.* v. *Industrial Commission* (Utah) 298 P. 381; *Salt Lake City* v. *Industrial Commission,* 61 Utah 514, 215 P. 1047. We are not required in the instant case to decide this question, for the reason that the plea of the statute of limitations was not timely interposed. The employee filed his petition well within a year after last payment of compensation. A hearing was had thereon at which plaintiffs here were represented by counsel and the applicant appeared in person without counsel. After a decision adverse to the employee, he moved for a rehearing, which was granted. At the rehearing both parties were represented by counsel and considerable testimony was taken. The plea of the statute of limitations was first interposed at the close of the case and just before its final submission. The general rule is that a party who desires to rely on the statute of limitations is ordinarily required to interpose the plea at the first opportunity when its application is apparent. 37 C. J. 1218; *Utah Delaware Mining Co.* v. *Industrial Commission* (Utah) 289 P. 94; Morin's Case, 122 Me. 338, 120 A. 44. Under some circumstances, when the plea of the statute of limitations is not interposed at the proper stage of the proceeding, permission, in the exercise of a sound discretion, may be given to interpose it later. 37 C. J. 1219. Here there was no such application addressed to discretion and no showing made why the question had not been timely raised. The finding made by the commission disallowing the plea was justified and we are not at liberty to disturb it.

The other two objections to the findings may be considered together. It is apparent that the only question for us

to decide is whether the findings by the commission that the employee is totally and permanently disabled and that such condition is attributable to the accident and resulting injury is supported by substantial evidence.
The rule has been settled by many decisions of this court that findings of fact made by the Industrial Commission on conflicting evidence will not be reviewed, except to ascertain if the findings are supported by substantial competent evidence. From a careful reading of the record, we are convinced there was sufficient competent evidence before the commission to support these findings. The applicant was an employee of the Chief Consolidated Mining Company and on March 1, 1924, was working in an underground mine operated by the company at Eureka, Utah. A fellow employee drilled into what is termed a "missed hole," exploding a blast therein, driving quantities of rock and dirt into the body of Ferguson, who was standing near by. The injuries suffered by him, as shown by the report of the attending physician, consisted of numerous abrasions and small lacerations of skin, face, and eyelids, numerous small abrasions of cornea and conjunctiva; large perforations of each eardrum; skin of hands, legs, abdomen, and face peppered with pieces of dirt; just above the pubis was a large deposit of dirt; both hands were peppered and the index and middle finger of right hand more deeply injured. The patient was removed to a hospital and there confined about five weeks. Under local anesthetic some pieces of rock were removed from the lower abdomen. There was some infection in the face and abdomen which apparently cleared up. About three months after the injury the employee returned to the mine, worked about three weeks as a lessee, but was unable to continue on account of pain and disability. He later tried to work as camp tender with a sheep herd, but had to give that up. For about three and one-half years he lived at Lava Hot Springs, where he took a bath each day in the hot mineral water. This he did under the advice of physicians. During the entire period from the accident until the hearing he has been under the care of physicians.

The record discloses that the insurance carrier, in addition to paying compensation, was rather liberal in providing medical attention and care in an effort to bring about the recovery of the employee. His condition, however, remained about the same. An infected tooth root was removed, as were also his tonsils. In addition to some impairment of hearing and eyesight, he is suffering from what is termed by the various physicians as articular rheumatism, chronic hypertrophic arthritis, or neuritis and arthritis deformans. The contention of the plaintiff here is that the present arthritic or rheumatic condition of the employee cannot be attributed to the accident, and, notwithstanding his injuries and deformities and pain suffered, that he is not totally permanently disabled.

While some of the medical experts were of the view that it would be impossible to definitely say whether the employee's present condition is attributable to the accident, for the reason that the causes of rheumatism lead one into the field of the unknown and unknowable, yet we think there is ample in the evidence to support the findings made by the commission. Before the accident, Ferguson was a strong, active, and robust man in good health, who had never had occasion to consult a physician, had never suffered from rheumatism, nor had he any rheumatic pains until after the accident. He now weighs about 45 pounds less than he did at the time of the accident. He is badly crippled and deformed in his hands, knees, feet, arms, and shoulders; walks with difficulty by use of a cane, can dress only with assistance, and he is unable to use his hands and arms in any kind of work, although he can write, and he suffers a very great deal of pain almost all the time. His eardrums are ruptured, his hearing and eyesight are impaired, his body is scarred and still carries particles of rock blasted into it by the accident. The company physician who attended him in the hospital says:

"Today, April 10, 1930, I find Mr. Ferguson badly crippled the deformity mostly in his hands and knees, however his feet and arms and shoulders are also involved. His condition is serious as to recovery.

All foci of infection as far as we know have been eliminated and his condition is still so bad that he is unable to do any work and the future outlook is unfavorable. Of course his present condition is articular rheumatism.

"Ordinarily articular rheumatism is not produced by an injury. We believe it is always secondary, caused by infection, usually some focus as the tonsils or teeth. In this case the rheumatism came on some time after the injury. He had some infection in the soft tissues of the body from dirt introduced at the time of the blast, but this infection had apparently cleared up before the symptoms of rheumatism appeared. Also he had some badly infected teeth and later a badly infected jaw as a result of a left over infected root, which were not caused by the blast. His articular rheumatism is evidently a result of infection from one of these sources. From my knowledge I am unable to decide which of these two infective processes are responsible for Mr. Ferguson's present condition."

### Another physician said:

"In the first X-ray picture he showed evidence of chronic arthritis. The courts have taken this matter entirely out of the hands of the medical profession when they say that if a man has a condition and he gets an injury that if there is any possibility of this injury making the condition worse, then the injury is responsible for what developed subsequently. This man undoubtedly had arthritis which was mild before he was injured. Subsequently it has developed into a completely disabling condition. What influence the injury had on it I don't know, nor does anybody else. Q. In other words you can't see any probability of the injury aggravating this arthritic condition? A. I think it does in a man that has bad joints and gets an injury, it certainly doesn't do it any good. Q. Would you be willing to state Doctor that this man's physical condition at the present time is such that he should not be expected to engage in remunerative employment? A. Yes, I think it is, and I doubt if he ever will be able to."

Another physician testified that Ferguson had neuritis, suffered a great deal of pain in the different joints, that there was arthritis in the knees, fingers, and he complained of the ankles, hips, and back; that there was a thickening of the joints; and that the arthritic condition from which he was suffering was the result of the injury caused by the accident. "It would be the result of blowing particles into

his system, and another thing the shock to the nervous system will disrupt the stability of your internal secretion, the thyroid glands and all the glands which control a good deal of the blood supply and nerves to the joints." That he would not expect his condition to improve but grow progressively worse.

Another testified:

"Q. What is your opinion as to the cause of this man's present condition? A. I think his injury was partly responsible, but not entirely responsible for this arthritic deformans. Q. Have you any doubt about that? A. Why, of course, there is always a doubt. Q. Do you favor that theory in preference to any other? A. I do."

The award of the Industrial Commission is affirmed.

CHERRY, C. J., and STRAUP, ELIAS HANSEN and EPHRAIM HANSON, JJ., concur.