## OSTLER v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5495.  Decided September 21, 1934.  (36 P. [2d] 95.)

*Ottosen & Copening*, of Salt Lake City, for plaintiff.

*Joseph Chez*, Attorney General, and *F. A. Trottier*, of Salt Lake City, for defendants.

MOFFAT, Justice.

The petitioner, E. D. Ostler, filed an application with the Industrial Commission of the State of Utah, for a compensation adjustment under the Workmen's Compensation Act (Rev. St. 1933, § 42-1-1 et seq.), alleging injuries growing out of an accident while employed by the Newhouse Realty Company. The alleged accident occurred on the

28th day of June, 1932. The Industrial Commission held two formal hearings, one on January 5, 1933, and the other on May 8, 1933, and denied compensation. The injury for which compensation is sought is derivative in its nature. The applicant has a mature cataract causing blindness in his left eye. It is claimed the cataract is the result of the accident which occurred on the 28th day of June, 1932. The State Insurance Fund is the insurance carrier. The relationship of employer, employee, and insurance carrier is admitted and the facts about the accident are not in dispute. The sole question is whether the cataract in the left eye of the applicant is directly connected with and resulting from the accident referred to. Aside from the facts relating to the accident about which there is no controversy, the evidence is that of medical experts and consists of their observations of the applicant and their opinions based upon these observations and the admitted facts. The question thus shifts to deductions made. If the doctors could have agreed as to whether the cataract was traumatic or senile, one difficult point of the controversy would have been eliminated. This they could not do. From the evidence it appears that whether a cataract is, by eye specialists, classified as senile or traumatic depends upon questions of age of the patient, manner and time of development, characteristics of the cataract itself as determined from examination, whether or not there has been an antecedent injury, and other facts upon which expert opinions may be based.

The accepted facts as to the accident which occurred June 28, 1932, are that while E. D. Ostler was in the employ of the Newhouse Realty Company as vacuum man, and while engaged in vacuuming room 1037 of the Newhouse Hotel in Salt Lake City, Utah, a wind blew the glass from an upper sash into the room where Otsler was working as he was attempting to close the window, so that fragments of broken glass from the window fell about Ostler's head, producing cuts along the bridge of the nose extending up to the left forehead, on the left cheek bone extending up

near the outer canthus or corner of the left eye. There was no direct injury to the cornea of the eye. The cuts and bruises were immediately taken care of. Aside from a continued stinging sensation in the left eye, no serious inconvenience was noticed for some time. Some time after the day of the accident, upon the suggestion of Mr. Sutton, manager of the Newhouse Hotel, and growing out of a complaint by Mr. Ostler concerning his eye, he visited Dr. Murphy who advised him to see an eye specialist. On October 1, 1932, Mr. Ostler consulted Dr. F. M. McHugh. At that visit he told Dr. McHugh that for the past month he had been gradually losing the sight of his left eye, and that it had gradually grown worse. Dr. McHugh determined from his examination that Mr. Ostler had a mature cataract of the left eye. The following questions were asked Dr. McHugh, to which he gave the following answers:

"Q. Doctor, he stated that about a month prior to this examination he noticed a diminution of his vision? A. Yes.

"Q. From your examination, doctor, were you able to determine how long the cataract had been bothering him? A. No.

"Q. Was there any indication of the injury suggesting the cause of the cataract? A. No.

"Q. Now, if there was any indication that you saw or that was disclosed by your examination that would connect it in your mind with the injury on that date, we would be pleased to have your explanation? A. Nothing in the cataract that would tell one whether it was a traumatic cataract or a senile cataract. So I would not know whether that is a traumatic or a senile cataract. If there is evidence that the patient had good reason for this accident, if he actually received an accident (injury) as described when the glass was blown in with great force, and struck him around over the eyes, and after that this condition showed up, that condition could come on within a week or two months; then I would say that it is probable that it is a traumatic cataract, and due to injury; but there was nothing that I saw in him that would enable me to say that this is a traumatic cataract or a senile cataract."

In substance Dr. Edwin Manson Neher testified that the usual traumatic cataract comes on from a breaking of the capsule inclosing the crystalline lens of the eye, either due

to sudden concussion or some foreign body passing through it, and develops within a few hours or a few days, or a few weeks following the accident, "and then it has an appearance that is usually granular when the little fibers of the lens that come out so the fluid from the anterior chamber of the eye gets in and that makes it opaque at a certain spot, while in a senile cataract we get a uniform grayness." Dr. Neher further stated that on account of the appearance of the cataract in the left eye and as there was also a senile cataract developing in the right eye he was led to believe that in all probability the cataract in the left eye was a senile one.

Dr. Thomas F. Walsh testified along similar lines to the other doctors. As illustrative of the difficulty the Commission had in getting anything definite, the following is taken from the doctor's testimony based upon the case history and an examination of the applicant made December 24, 1932:

"Q. Assuming the history as stated by the applicant was correct do you have an opinion as to the connection or association with the condition as you found it, and with an alleged injury on June the 28th, 1932? A. I think it is possible that such an injury as described to me could cause the present condition.

"Q. You state possibly. Could you make that stronger by using the word probability? What are the probabilities of such a condition? A. In what degree?

"Q. We can't deal in possibilities? A. I see. I say then that such an accident as described to me could cause the present condition.

"Q. Do you mean possibly or probably? A. A possibility. There is a possibility that it is true that it could happen.

"Q. Would you say that there is a probability that it did happen? A. I am not in a position to state that, only having the history to support it."

Dr. Linden had made a general examination of the applicant, but aside from finding certain systemic weaknesses and a physical age in excess of his chronological age, nothing helpful as relating to the question before the Commission was developed.

After the first hearing and before the second hearing, viz., March 11, 1933, Dr. Walter M. Stookey made an examination of the applicant and also the record of the first hearing, so that Dr. Stookey had the benefit of the former record as well as that of his own examination. Whether or not Dr. Stookey's testimony would have been the same without an examination of the record we may not know, although Dr. Neher called attention to what was a misunderstanding of his testimony by Dr. Stookey.

On several occasions Dr. Stookey referred to Dr. Neher's testimony as though Dr. Neher had testified that there was a direct injury to the eyeball. Without referring to more than one such reference, we find the following as illustrative:

"Q. Now, (to Dr. Stookey) do you have an opinion from your examination whether there has been some piece of glass, some small particle of glass that did as a matter of fact penetrate the lens of the eye? A From my judgment of the case and from Dr. Neher's statement and from an examination, and a statement from him of the length of time in which the cataract was matured, and from the time of the injury my judgment would be it was due to some small particle penetrating the eyeball. In Dr. Neher's testimony he states there was a small corneal scar on the eye as I remember it, that I took particular note of."

Then after repeating the case history as a part of a further question Dr. Stookey was asked:

"When you referred in your examination to the record of the testimony of Dr. Neher is that the portion of the testimony you referred to?"

To which Dr. Stookey replied:

"That part and also the corneal scar."

Dr. Nehr was called again after Dr. Stookey had testified and was interrogated as to whether or not he had testified as to a corneal scar, to which inquiry Dr. Neher made the following reply:

"I would like to make this statement with respect to the linear scar which I think misled Dr. Stookey, and in doing so I would like

to read exactly from my history. In the left eye there is a linear scar along the bridge of the nose extending up to the left forehead and on the left cheek bone extending up near the outer canthus of the eye. The scar was not on the cornea, and at no time even with a slit lamp have I been able to find a scar on the cornea. I noticed in the history that statement. Either I did not complete it or it was not completed there. When it says in the left eye there was a linear scar, that was not a scar on the cornea, but a scar in the region of the left eye which took the course as I described."

The foregoing summary and quotations from the evidence, while not complete, reflects the general substance of the testimony, except that Dr. Stookey was of the opinion the cataract was of traumatic origin, and the character of the problem before the Industrial Commission and now before this court upon the writ of review.

The Commission, after making findings reflecting the facts adduced from the evidence, also found or concluded:

"That the applicant has not sustained his burden of proof that he suffered an accidental injury to his left eye on June 28th, 1932, which resulted in the loss of vision of which he complains, and for which loss he seeks compensation."

The applicant complains of this finding or conclusion and urges that the Commission erred and acted without or in excess of its powers in denying the petition and award for compensation, and in holding that the evidence introduced did not sustain the burden of proof cast upon the petitioner.

There is no question respecting any jurisdictional facts. After the second hearing the Commission affirmed the findings made after the first hearing and added some additional findings. The findings of the Commission being negative, denying an award, upon review present different problems and different avenues of approach and consideration than when an attack is made upon an award allowing compensation. When a decision of the Commission refuses to award compensation because of insufficiency of evidence to sustain the burden of proof, the situation is analogous to a general demurrer to a com-

plaint, in that the question is substantially conceding all the uncontradicted evidence and admissions as established, still the facts so conceded and proved do not entitle the applicant to an affirmative award as a matter of law.

In all cases of this kind the accidental injury complained of must bear some direct and causal relation to the disability. To annul a finding such as the finding herein involves such an establishment of uncontroverted fact as to warrant this court in directing the character of finding that should be made from the evidence.

"Unless upon the whole record it can be said that the Commission acted arbitrarily or capriciously in making its findings, this court under the statute is without authority to interfere."

It is not for this court in matters of evidence to interfere or to substitute its judgment for that of the Commission unless it is made clearly to appear that the Commission has misconstrued or misapplied the provisions of the statute; but if such is made to appear, then it becomes the duty of the court to correct the same. Where there is substantial competent evidence to support an award, it will not be disturbed, likewise when there is no substantial competent evidence to support an award or an order denying an award, it is held the award or order must be affirmed, not because the Commission acted arbitrarily or capriciously, but because of the insufficiency of competent evidence. It is said in this regard that "the commission may not without sufficient cause arbitrarily refuse to follow the uncontradicted evidence, yet, before this court can say that the Commission acted arbitrarily or capriciously in the matter, it must be made clearly to appear that such was in fact the case." *Kavalinakis* v. *Ind. Comm. et al.*, 67 Utah 174, 246 P. 698, 701; *Hauser* v. *Ind. Comm.*, 77 Utah 419, 296 P. 780. It would seem the words "arbitrarily" and "capriciously" are used merely to characterize a conclusion, when the conclusion is announced with no substantial evidence to support it or a conclusion contrary to substantial competent evidence.

It is also said that:

"In our limited powers to review the awards of the Industrial Commission, we are precluded from passing on the weight of the testimony" *(Utah Fuel Co.* v. *Ind. Comm. et al.,* 76 Utah 141, 287 P. 931, 932), because "the findings and conclusions of the commission on questions of fact shall be conclusive and final and shall not be subject to review; such questions of fact shall include ultimate facts and the findings and conclusions of the commission." Rev. St. Utah 1933, § 42-1-79.

In any aspect of the case we are compelled to examine the record. Whether or not the evidence is weighed, it must be determined: (1) Whether or not there is any substantial evidence to support the findings, (2) and whether or not that evidence is competent evidence. ▪ *Fish Lake Resort Co.* v. *Ind. Comm. et al.,* 73 Utah 479, 275 P. 580; *Garfield Smelting Co.* v. *Ind. Comm.,* 53 Utah 133, 178 P. 57; *Globe Grain & Milling Co.* v. *Ind. Comm.,* 57 Utah 192, 193 P. 642; *Cudahy Packing Co.* v. *Brown,* 61 Utah 29, 210 P. 608. Whether or not "substantial evidence," "legal evidence," and "competent evidence" mean the same thing or have varying or differing requirements to measure up to the legal conception of what constitutes such evidence we need not discuss, nor need we discuss the weight to be given to opinion evidence. This court has heretofore held that the Industrial Commission is not bound to accept physicians' opinions on whether disabilities were attributable to an alleged injury.

In the case of *Utah Del. Min. Co.* v. *Ind. Comm. et al.,* 76 Utah 187, 289 P. 94, 99, it was held:

"Notwithstanding the opinion expressed by the attending physician—it was but an opinion—that he saw no connection between the present disabilities of the applicant and the injuries ▪ sustained by him at the time of the accident, nevertheless the commission had before it sufficient evidence to justify a finding that the disabilities were attributable to the accident."

It is likewise true that upon conflicting opinions expressed by physicians as to the connection, if any, or

whether or not there is such connection between the alleged accidental injuries and the claimed disabilities, the Commission is not bound to find from such expressed opinions that there is a connection and thereupon be required to make an award. An examination of the record, from which the condensed statements heretofore were made, reveals that the question involved herein is whether or not the alleged disability resulting from a cataract of the left eye resulted from the accidental injury inflicted by the window glass cutting the face, or from the blow in connection therewith rests upon deductions made from the facts relating to the accident and the claimed disability.

Under the law, whether or not we may agree or disagree with the findings and conclusions made by the Commission is immaterial. We cannot say that the Commission in finding that the applicant had not sustained his burden of proof that the disability to applicant's left eye was the result of the accidental injury complained of was error as a matter of law. The finding is more in the nature of a conclusion, yet the type of the case was such as to make such a finding or conclusion necessary. To determine the question it was necessary to draw conclusions.

Upon the authorities herein referred to, the decision of the Industrial Commission in this case must be, and accordingly is, affirmed.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.