## LITTLEFORD v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5552.    Decided February 2, 1935.    (40 P. [2d] 231.)

*Ray Van Cott* and *Ray Van Cott, Jr.*, both of Salt Lake City, for plaintiff.

*Joseph Chez*, Atty. Gen., and *Fisher Harris*, City Atty., and *Grant Macfarlane*, Asst. City Atty., both of Salt Lake City, for defendants.

FOLLAND, Justice.

This case is here on certiorari to review a decision of the Industrial Commission of Utah denying compensation to plaintiff for the loss of sight in one eye. The only disputed

question before the commission was whether a certain accidental injury received by plaintiff in the course of his employment on July 28, 1933, was the cause of the blindness in his right eye discovered by him on September 8, 1933. The only question before us is whether there is any substantial competent evidence in the record to support the findings and decision of the commission.

The record discloses that Littleford was on July 26, 1933, working for Salt Lake City as a laborer. He and another employee were engaged in piling paving stones which had been taken up from a crosswalk in Salt Lake City and brought to the street department yards. As Littleford leaned or slipped forward a stone about 4x4x4 inches in size was tossed toward the pile by his fellow workman and struck him a blow on the head causing a skin or scalp wound about 2½ inches above and 1 inch back of the right eye. Littleford suffered a feeling of dizziness for about two minutes and then walked with his fellow workman to the office where the wound was cleansed, treated with mercurochrome, and covered with a compress around the head. After resting 30 or 40 minutes he returned to his job and worked the balance of the day. He continued in the employment without loss of time until August 18th, when the work ceased. Upon awakening on the morning of September 8th and looking around the room Mr. Littleford noticed "something seemed awfully funny." He placed his hand over his left eye and discovered he could see nothing with his right eye. He thereupon sought medical aid but without beneficial result as to cure, so that he is now blind in the right eye. Between the date of the accident and the morning of September 8th he had noticed no difference whatever in his vision and had suffered no pain or inconvenience from his eyes.

It is contended by plaintiff that the blindness of his eye was caused by the accidental blow on his head on July 26th. This view was supported by two physicians, eye specialists, who testified they had examined the eye and gave it as their

opinion that the blindness was caused by the blow on the head. Two other physicians, also eye specialists, called by the city, examined plaintiff's eye and gave it as their opinion that there was no relationship betwen the blindness and the previous blow on the head. Plaintiff's experts testified that the blindness was caused by an inflammation of the optic nerve known in eye parlance as a "choked disc." The city's experts testified the blindness was caused by an obstruction to the artery which cut off the supply of blood going into the eye. Strange as it may seem, the doctors did not all see the same conditions when they looked into the eye with their ophthalmoscopes. Not seeing the same conditions, they naturally reached different conclusions as to the immediate cause of blindness and announced different opinions as to the remote cause of the conditions they found. A fifth physician, also an eye specialist, was called by plaintiff and testified to having looked into plaintiff's eye two days before the hearing and described the condition he then saw. On cross-examination he testified:

"Q. It is your opinion that this condition of the man's eye was caused by a choked disc? A. I would not say.

"Q. Have you no opinion? A. No, sir. I didn't get the history and I didn't see the eye before.

"Q. Do you think that this condition could have been an obstruction in the arteries and blocking of the eye? A. It is possible this atrophy can follow those conditions."

This expert was not asked to express an opinion whether the blindness resulted from the accident, but was interrogated by the commissioner conducting the hearing as follows:

"Q. You feel that a jar, a blow on the temple as I have described may cause blindness in your eye? A. Yes, it could but it would have to follow the injury. It could not be of long duration.

"Q. Is that normal, what you would normally expect or would it be a very rare possibility of it occurring? A. It would be rare. I think it should happen within a short time.

"Q. It would manifest itself immediately after the injury? A. Yes. There certainly would be other symptoms."

He further said, respecting the lapse of time between the accident and the blindness:

"I would have to say it is a little far-fetched in my experience to go that long. Of course anything can happen in medicine. I have been in it 30 years, and you are not cock sure of anything."

This is not a case where blindness is clearly traceable, by the testimony of any one, to the scalp injury. X-ray pictures were taken, but these showed negative as to any fracture of the skull or other cause which would indicate the eye condition was traceable to the accident. A finding as to whether or not blindness resulted from the accident depends on the opinion of experts. The experts testifying for plaintiff said it was possible and probable that blindness was caused by the accident, particularly in view of the fact that they could find no other cause, the plaintiff being physically sound and free from disease. On the other hand, the experts testifying for the city were unable to find any relationship between the accident and the blindness and gave as their opinion that it was not so caused. There is here a clear conflict in the evidence as to the condition of the eye, the immediate cause of the blindness; that is, whether resulting from a "choked disc" of the optic nerve or from an obstruction to the artery, and also in the opinions of the experts as to whether or not the condition found resulted from the blow on the head.

It is wholly unnecessary for us to elaborate further on the evidence for the purpose of determining which set of experts should be believed or which version of the eye condition is the more probable. The Legislature has placed the power and the duty of determining facts from conflicting evidence in the Industrial Commission and not in this court. Where there is substantial competent evidence to support the findings and decision of the commission, they will not be disturbed. *Ostler* v. *Industrial Commission,* 84 Utah 428, 36 P. (2d) 95. A careful reading of the entire record leads to the conclusion that there is sufficient competent evidence to support the commission's find-

ings and decision. We, therefore, have no alternative but to affirm the decision of the Industrial Commission. Such is the order.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.