COLONIAL BUILDING & LOAN ASS'N et al v.
INDUSTRIAL COMMISSION OF UTAH et al.
No. 5305. Decided December 7, 1934. (38 P. [2d] 737.)

*Bagley, Judd & Ray,* of Salt Lake City, for plaintiffs.

*Joseph Chez,* Attorney General, and *L. J. Holther,* of Ogden, for defendants.

MOFFAT, Justice.

James Clinton Allen, husband of applicant, Ida Ruth Allen, was killed in the state of Wyoming on the 20th day of May, 1931, in an automobile accident a short distance easterly from the town of Rawlins.

This proceeding is brought to review an award of the Industrial Commission requiring the Ocean Accident & Guarantee Corporation to pay compensation for the death of James Clinton Allen. The Industrial Commission found that Allen died as a result of an accident arising out of and in the course of his employment with the Colonial Building & Loan Association, a corporation. The Ocean Accident & Guarantee Corporation is the insurance carrier.

Essentially there are but two questions involved in this proceeding. Was James Clinton Allen an employee of the Colonial Building & Loan Association at the time of the fatal injury? And did the injury resulting in death arise out of and in the course of that employment?

The questions thus presented are purely questions of fact. The Industrial Commission found both issues in favor of the applicant, Ida Ruth Allen, and against petitioners herein. By a long line of decisions this court has held that findings made by the Industrial Commission are binding upon this court if there is any substantial

competent evidence to support them. This court will not disturb the findings of the Industrial Commission on conflicting evidence. *Chase* v. *Industrial Commission,* 81 Utah 141, 17 P. (2d) 205. This is in accordance with the provisions of the statute. In this court the review shall not be extended further than to determine "whether or not the commission acted without or in excess of its powers," and "if findings of fact are made, whether or not such findings of fact support the award under review." R. S. Utah 1933, 42-1-78. And further: "The findings and conclusions of the commission on questions of fact shall be conclusive and final and shall not be subject to review." R. S. Utah 1933, 42-1-79.

The Industrial Commission in this case made full and complete findings and conclusions. We have examined the whole record and find nothing therein that would justify disturbing the findings made and conclusions reached by the commission. Sufficient it is to say in our opinion the findings are supported by competent and substantial evidence. No good purpose could be served by a restatement nor an analysis of the evidence, nor by an argument as to where it preponderates. Counsel for both sides have said about all that could be said upon that matter. This case is clearly distinguishable from the case of *Perry Canning Co.* v. *Industrial Commission et al.,* 75 Utah 1, 281 P. 467.

The award of the Industrial Commission is affirmed.

STRAUP, C. J., and EPHRAIM HANSON, J., concur.

FOLLAND, Justice (concurring).

Undoubtedly whether the deceased, James Clinton Allen, was an employee of the Colonial Building & Loan Association at the time of the fatal injury is a fact question. The evidence on that subject is in conflict. This court is not allowed on review to disturb the finding of the Industrial Commission where, as here, there is substantial competent evidence to support the finding that Allen was so employed.

The other question is one of more difficulty. The record shows that Allen and one Whittlesey were on their way from Ogden to Denver and Pueblo on business of their own, or at least on some business other than the business for the Colonial Building & Loan Association. It is undisputed that Allen intended calling at Cheyenne to there transact business for and on behalf of the Colonial Building & Loan Association. The most direct road to Denver leads through Laramie and thence south to Denver. In order to reach Cheyenne the parties would have to leave the main Denver highway at Laramie and travel easterly to Cheyenne. Had the accident happened after leaving Laramie on the detour to Cheyenne, there would be no question but that the trip from Laramie to Cheyenne was being made for the purpose of furthering the interests of the Colonial Building & Loan Association. The fatal accident happened, however, a short distance east of Parco, and before the parties reached Laramie. They were at the time as much on the road to Denver as on the road to Cheyenne. This court in *Sullivan* v. *Industrial Commission,* 79 Utah 317, 10 P. (2d) 924, had before it a similar but converse situation. We there held that, where an employee breaks the continuity of a journey in his employment for purposes of his own, and sustains an injury before he brings himself back into the line of his employment, the injury is not compensable, since not arising out of or in the course of employment. It has been held that where one, while making a journey in his own behalf, is injured and killed while en route, he is not entitled to compensation, notwithstanding his employer had requested him to attend to some duty connected with his employment at his destination. The test was whether the journey would have gone forward, although the business en route had been dropped. Where this is so, the business of the employer is merely an incident of the trip, and the travel as well as the risk is then personal. *Marks' Dependents* v. *Gray,* 251 N. Y. 90, 167 N. E. 181; *Barragar* v. *Industrial Commission of Wisconsin,* 205 Wis. 550, 238 N. W. 368, 370, 78 A. L. R.

679. In the latter case, the court, after quoting from *Marks'
Dependents* v. *Gray,* supra, said:

"It is our conclusion that the test laid down by the New York court
is sound. If this test is applied to the findings of the commission,
it is clear that the business errands requested of deceased as an inci-
dent to this trip were so far subsidiary to the personal objectives
of the deceased that the trip would not have been insisted upon for
business purposes had the deceased elected not to make the trip for
his own purposes, and that in consequence the service was not a con-
current cause of the trip. The ascertainment of the facts necessary
to apply this test involves the determination of a question of fact,
and, if there is evidence to sustain the commission, its findings cannot
be disturbed. We have concluded that there is evidence upon which
the commission could have concluded that the business errands were
involved as mere incidents to a pleasure trip for which permission
had been unconditionally given and that they were in no way con-
curring causes of the trip. That there is evidence from which the
commission could have come to a contrary conclusion is true but
immaterial in view of the rules applicable to review of findings by
the commission."

The second question was also one of fact for the com-
mission to decide. The evidence shows the trip had a double
purpose; that Allen had in mind the business at Denver and
Pueblo and also the business en route for the Colonial Build-
ing & Loan Association at Cheyenne; that the trip would
not have been made for either purpose alone, but was made
to accomplish both purposes on the same trip. Upon reach-
ing Parco, some time after midnight, Allen and Whittlesey
discussed the matter and decided that, instead of stopping
for the night at Parco, they would drive on to Cheyenne to
permit Allen to transact there the business of the Colonial
Building & Loan Association before proceeding to Denver.
The commission made a finding:

"That at the time of his receiving said fatal injury said decedent
was engaged in proceeding to the city of Cheyenne for the purpose
of transacting business for said Colonial Building & Loan Association
solely and would not have been traveling upon the highway eastward
at said time had it not been for the occasion of such business to be
so transacted by him."

The question is a close one, for the reason that the accident happened on the highway which would lead to either Cheyenne or Denver. With some hesitancy I have reached the conclusion that there is substantial evidence which supports the above finding to the effect that this particular part of the journey, at the time it was taken, was intended by the parties as a journey to Cheyenne for the purpose of transacting business there, and that the parties might not have continued their journey at that time had the intention not been to go directly to Cheyenne.

There being substantial evidence in support of the commission's finding, we cannot do other than affirm the award.

ELIAS HANSEN, Justice (dissenting).

Ida Ruth Allen, the widow, and two minor children of James Clinton Allen, deceased, were by the Industrial Commission of Utah awarded compensation payable by the Colonial Building & Loan Association and its insurance carrier, the Ocean Accident & Guarantee Corporation. The amount of compensation so awarded was for the full amount allowable in case of death. In the main there is no conflict in the evidence. The evidence received at the hearings had upon the application for compensation supports, with one or two exceptions, the findings made by the defendant commission. Among the findings are the following:

"That James Clinton Allen * * * was killed in the State of Wyoming. * * *

"That at the time of the death of said decedent he was Vice-President of the Colonial Building & Loan Association of Ogden, Utah, and under a contract still then existing between himself and said association had the charge and control of the sale of its securities. That he was likewise a director of such association and an executive officer thereof in his duties as such officer of such association performing such functions as are ordinarily performed by a Vice-President and director, being a member of the Executive Committee of such association and discharging such duties with regard thereto as were assigned by the Board of Directors or by the President of such association.

"That in addition to the duties so performed by said decedent for said Colonial Building & Loan Association, said decedent at the time

of his death was the Executive Vice-President of Colonial Holding Corporation, a corporation, whose business primarily consisted in the ownership of permanent reserve stocks of building and loan associations situate within the State of Utah and other states including the Interstate Fidelity Building & Loan Association of Salt Lake City, Guaranty Savings & Loan Association of Pocatello and the Denver Building & Loan Association of Denver, Colorado. That in the exercise of his duties as such Executive Vice-President of said Colonial Holding Corporation the decedent customarily exercised some supervision with respect to the business of the associations particularly above named. * * * That two months prior to his death arrangements had been entered into between himself and the Colonial Building Corporation by the terms of which he was to become general manager of that corporation, to have control and management of the sales of the securities issued by the various associations in which said Colonial Holding Corporation was interested so far as the same might be procured for him by said Colonial Holding Corporation and to have general control and act as general manager of said Colonial Holding Corporation, retaining the first $10,000.00 of net income above his expenses. * * *

"Decedent received from the Colonial Building & Loan Association and had received since January 1st, 1931, the sum of $150.00 per month, together with the commissions earned and accruing to him under the sales contract. * * *

"That immediately prior to his death the said James Clinton Allen planned a trip by automobile to Denver, Colorado for the purpose of transacting business at said city with which said Colonial Building & Loan Association had no connection and on the date of his departure agreed with the President of said association that he would visit the city of Cheyenne, Wyoming for the purpose of closing a transaction with one Rodger Myers in said city, by the terms of which said Rodger Myers would take over the management of the lending of the moneys of said association in the State of Wyoming and take care of its properties acquired by it in such state. That the customary route followed in automobile traffic between the home of said James Clinton Allen and the place of business of said Colonial Building & Loan Association in Ogden, Utah and Denver, Colorado does not pass through Cheyenne, Wyoming, but turns southerly at Cheyenne [Evidently "Cheyenne" just quoted is in error. It should be Laramie.] Wyoming towards Fort Collins, Colorado, so that such business to be transacted for such association by said decedent required him to continue from Laramie eastward to Cheyenne, Wyoming for the purpose of transacting the same. That upon reaching Parco, Wyoming, at a late hour of the night the said decedent determined to

travel farther eastward before stopping for the night in order to be able to reach Cheyenne, Wyoming early in the morning and transact such business for said association with Rodger Myers before proceeding further to Denver and that while so engaged in traveling further toward Cheyenne, the automobile in which said decedent was traveling was overturned and decedent suffered injuries in connection with the overturning of such automobile which thereafter immediately and without other cause occasioned his death within a few hours.

"That at the time of his receiving said fatal injury said decedent was engaged in proceeding to the city of Cheyenne for the purpose of transacting business for said Colonial Building & Loan Association solely and would not have been traveling upon the highway eastward at said time had it not been for the occasion of such business to be so transacted by him."

The evidence, without conflict, shows that Mr. Allen, in company with one Ralph Edward Whittlesey, left Ogden, Utah, for Denver, Colo., on the night of May 19, 1931. The automobile in which they traveled was owned by Whittlesey who so far as appears had no business in Cheyenne, but did have business at Denver. Mr. Whittlesey, who was with Mr. Allen when he was fatally injured, testified as follows:

"When we started, I was planning to go to Denver. When we got to Parco, Wyoming, I looked at J. C., Mr. Allen, and said, 'I am not very sleepy, are you, J. C.?' and he said, 'No, do you want to drive on?' and I said, 'I would just as lief drive on to Denver.' He said, 'I have a party to see in Cheyenne. We can go direct to Cheyenne and then go to Denver tomorrow afternoon,' which was the afternoon of that day because the accident was early in the morning—* * * He then told me he had to see a Mr. Myers over there."

It was necessary for Mr. Allen to travel over the road where he was fatally injured whether his destination was Cheyenne or Denver. It was at Laramie, Wyo., a considerable distance beyond the place of the accident where the road divides, one going southward to Denver, and the other continued eastward to Cheyenne. The evidence is all to the effect that the purpose of Mr. Allen in taking the trip on which he was fatally injured was as much to attend to the business at Denver as it was to attend to the business at Cheyenne. The only fair inference to be drawn from the

evidence is that he deferred going to either Cheyenne or Denver to attend to business until such time as he was able to attend to the business at both places. Admittedly the business which Mr. Allen had at Denver was in no way connected with the Colonial Building & Loan Association. The evidence is not entirely clear as to whether Mr. Allen's business at Denver was his own or that of the Colonial Holding Corporation. That it was necessary for Mr. Allen to travel over the road where he was killed, to attend to the business of the Colonial Building & Loan Association at Cheyenne, and, likewise, his own business, or that of the Colonial Holding Corporation at Denver, is not questioned.

To find that at the time of the accident he was solely engaged in traveling to Cheyenne for the defendant Colonial Building & Loan Association is, in my opinion, wholly without support in the evidence. Defendants seem to place considerable reliance on the conversation heretofore quoted. There is nothing in that conversation which justifies the conclusion that Mr. Allen would not have been on the road where he was at the time of the accident except for the fact that he intended to go to Cheyenne before going to Denver. So far as appears from that conversation, it was not because they decided to go to Cheyenne first that caused them to continue to drive beyond Parco. Had it not been for the contemplated trip to Denver on the afternoon of that day they might have, so far as appears, remained at Parco for the night or driven on towards Denver. Moreover, I am unable to perceive of any legal basis for making any distinction between traveling during the night and traveling during the day so long as such traveling was necessary to the accomplishment of both purposes of the trip. In my opinion the evidence in this case brings it squarely within the doctrine announced by this court in the case of *Perry Canning Co.* v. *Industrial Commission,* 75 Utah 1, 281 P. 467. The principles there announced are applicable whether the business which Mr. Allen had at Denver was his own private business or business which he intended to

transact for the Colonial Holding Corporation. In either event there is no justification for casting upon the Colonial Building & Loan Association and its insurance carrier the entire liability for an accident which occurred while Mr. Allen was engaged in traveling along the road over which it was necessary for him to travel in order that he might attend to his own business or that of the Holding Corporation, as well as the business of the Colonial Building & Loan Association.

I am thus of the opinion that one-half of the award granted by the commission should be annulled.