NORRIS v. INDUSTRIAL COMMISSION et al.

No. 5657.   Decided October 22, 1936.   (61 P. [2d] 413.)

*Willard Hanson,* of Salt Lake City, for plaintiff.

*Joseph Chez, Atty. Gen.,* and *Gustin & Richards,* of Salt Lake City, for defendants.

WOLFE, Justice.

Certiorari to the Industrial Commission to review an order denying compensation to Ione W. Norris, widow of Thomas E. Norris, the latter having died on January 13, 1934, from what the attending physician diagnosed as occlusion of the coronary artery. On December 9, 1932, while working for the Publix Theatres Corporation, Norris fell and among other severe injuries sustained a fracture of the right leg near the hip joint and injuries about the right knee. After removal of a cast extending from the ankle to the hip, which had been on for nine weeks, the right leg began to swell, accompanied with pains in the right knee. Norris for the next year and until his death suffered from this swelling. There is no dispute that it was caused by a thrombosis of the longus saphenous vein (one of the two large superficial veins of the leg), probably caused by an irritation of the vein, in turn probably caused by the accident or by the cast made necessary by the accident. Norris obtained compensation for total temporary disability and obtained an award for permanent partial disability of the right leg for 52½ weeks. There is no dispute involving these awards. The dispute arises on account of what subsequently happened. On January 3, 1934, about one year and one month after the accident, Norris was taken to the hospital suffering with what was diagnosed as a fecal impaction with acute appendicitis. He was operated on and was apparently making good recovery until the morning of January 13th, when he was suddenly stricken with what

the doctor diagnosed as a beginning thrombosis of the coronary artery, caused, it was surmised, by emboli. On the afternoon of January 13th he died. The attending physician gave in his report as the cause of death,

"Coronary artery occlusion; myocardial degeneration. Other contributing causes of importance, operation chronic appendicitis January 3rd, 1934; condition for which performed fecal impaction."

More accurately used, an occlusion seems to be the general term for a closing of the vein or blood vessel to the passage of the blood. It may be caused by a thrombosis or an embolus; a thrombosis, the plugging of a blood vessel through the formation of a clot or obstruction on the walls of the vessel or vein; an embolus, a plug which floats along until it becomes lodged so as to obstruct the passage of the blood. It consists usually of a clot of fibrin, a shred from a morbid growth, a globule of fat, air bubbles, or a microorganism. Thrombosis and occlusion are often used interchangeably because a thrombus causes occlusion. An embolus or floating particle by attaching itself or becoming wedged may form a thrombosis or occlusion, but ordinarily a thrombus is caused by an inflammation of the walls of the vessel. In this case the cause of the death being conceded to be an occlusion of the coronary artery, the question was: Was it caused by an embolus which broke from the thrombosis of the longus saphenous vein of the right leg or from the appendicitis operation, or from some other cause? If from the first, the death would be traceable to the accident and the defendants would be liable. If from the second or third causes, it would not be traceable to the accident, at least with sufficient conviction to rise to the dignity of proof.

The Commission found that the death was caused by "coronary artery occlusion and myocardial degeneration. *The contributing cause of importance was operation for chronic appendicitis on January 3rd, 1934."* (Italics ours). On rehearing the decision was affirmed, but the findings did not include the specific sentence above italicized, but

stated that it "was not caused by any accident or injury arising out of or in the course of the employment with the Publix Theatres Corporation, as heretofore found in its Findings of April 24th, 1934."

The applicant founds her appeal on the familiar contention that the "uncontradicted testimony clearly shows that said Norris died as a result of the injuries received on December 9th, 1932, while in the course of his employment and that the decision of the Industrial Commission is contrary to and not sustained by [any substantial] evidence." To this we cannot accede. A reading of the record convinces us that the commission might well have found that the death was caused by the accident. We are not prepared to say that the record does not show that the more probable cause of the coronary occlusion was the breaking away of an embolus from the thrombosis of the longus saphenous vein of the right leg rather than that it originated from the area of the appendix, but it is not our province to measure the relative probabilities. That is for the commission. Moreover, in its decision on the rehearing, the commission did not specify that the contributing cause of importance was the operation for chronic appendicitis of January 3, 1934. It might have concluded that there was not sufficiently definite proof that the coronary occlusion was caused by either an embolus from the leg or the region of the appendix. It was testified to by the doctors that in both cases to reach the coronary artery, emboli from either region would have to go from the veins to the right auricle, thence to the right ventricle, thence through the pulmonary artery (which carries venous blood) to the lungs, thence to the left auricle, left ventricle, through the aorta to the coronary artery; that it was an exceedingly rare thing, if not impossible, for an embolus to do this, as they were almost without exception filtered out by the lungs.

The commission may have concluded that the coronary occlusion was caused by a thrombosis originating in the coronary artery; that is, that a thrombus or clot became

organized by some local cause in this artery. There was conflicting expert testimony on the question of the relative probability of the cause being an embolus from the leg or from the region of the iliac fossa (lower right quadrant of the abdomen). The brief of plaintiff is devoted to demonstrating the lack of credibility to be given to the opinion of the doctors for the defendants in order to show it to be unsubstantial evidence. But the evidence of Dr. Hummer cannot be called unsubstantial. Again, therefore, we have the old case of a conflict of evidence which it is for the commission to resolve. It may be well to sum up the principles laid down in a number of previous cases regarding the jurisdiction of this court over awards and orders of the commission.

The Legislature has, in effect, said:

"The Commission is the final arbiter of the facts. If there is error in judgment or conclusions of or from facts, it must be the Commission's error and remain there. We give the Supreme Court the right to speak only by warrant of law in compensation cases when it speaks in reference to errors of law alleged to have been made by the Commission."

An apparent exception is on the finding by the commission of jurisdictional facts. On these this court examines the evidence to see whether it clearly preponderates against the conclusions of the commission. If this were not the case, the commission might exercise jurisdiction in cases where the Legislature said it should not, or refuse to exercise jurisdiction where the Legislature said it should, simply by virtue of the conclusion it arrived at from the evidence of jurisdictional facts. But properly looked at, such review by this court is, in the last analysis, on a question of law. Jurisdiction may depend on facts as well as law but the final question is a legal one. Did or did not the commission correctly assume or refuse jurisdiction?

Where the matter presented on appeal is the question of whether the commission should have in law arrived at a conclusion of fact different from that at which it did ar-

rive from the evidence, a question of law is presented only when it is claimed that the commission could only arrive at one conclusion from the evidence, and that it found contrary to that inevitable conclusion. But in order to reverse the commission in this regard it must appear at least that (a) the evidence is uncontradicted, and (b) there is nothing in the record which is intrinsically discrediting to the uncontradicted testimony and (c) that the uncontradicted evidence is not wholly that of interested witnesses or, if the uncontradicted evidence is wholly or partly from others than interested witnesses, that the record shows no bias or prejudice on the part of such other witnesses, and (d) the uncontradicted evidence is such as to carry a measure of conviction to the reasonable mind and sustain the burden of proof, and (e) precludes any other explanation or hypothesis as being more or equally as reasonable, and (f) there is nothing in the record which would indicate that the presence of the witnesses gave the commission such an advantage over the court in aid to its conclusions that the conclusions should for that reason not be disturbed.

If the commission should decide against the uncontradicted evidence under those conditions, its decision would as a matter of law be arbitrary and capricious, which is another way of saying that it would be unreasonable. In this case even if conditions (a), (b), and (c) above were present, which they are not, the applicant's whole case would rest on the ability of the opinion evidence to carry conviction. If the party appealing should have put one or more doctors on the stand to give opinion evidence, and even though uncontradicted it did not carry conviction either because of speculation or improbability inherent in it or because the doctors themselves stated that their opinions were nothing more than intelligent guesses, as frankly stated in this case by Dr. Sprague and at least one other doctor, the commission would not be required as a matter of law to follow such evidence. It might conclude

that the case had not been proved by the applicant. While condition (e) may have been met, in that the applicant's contention regarding the cause of the coronary occlusion might have precluded any other hypothesis or explanation as being more reasonable, it might yet not reasonably be said to carry such conviction to the minds of the commission as to the real cause of said occlusion that it would be required to accept it. But, as said before, the opinion evidence was not uncontradicted, and therefore condition (a) above was not fulfilled. We do not mean to say that when doctors give what appear to be convincing opinions that they will be considered as contradicted by the introduction of some opposite, unreasonable unsubstantial make-believe opinion. The evidence contradicting as well as the evidence in favor must have substance, but even in determining whether it has substance, great respect will be accorded the findings of the commission in that regard. In this case we cannot say that the contrary opinions were without substance or reason.

For the reasons above stated, the order of the Industrial Commission denying compensation is affirmed.

ELIAS HANSEN, C. J., and FOLLAND and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., concurs in result.