## ELLIS v. INDUSTRIAL COMMISSION et al.

No. 5810. Decided January 4, 1937. (64 P. [2d] 363.)

George Y. *Wallace,* of Salt Lake City, for plaintiff.

*Bagley, Judd & Ray,* of Salt Lake City, and *Hammond & Thatcher,* of Bountiful, for defendants.

MOFFAT, Justice.

There is a long story forming a background to this proceeding. Two reviews have been before this court in which Glen Spencer was the applicant, plaintiff, or petitioner for a review of the action of the Industrial Commission of Utah. The opinions are reported in *Spencer* v. *Industrial Comm.,* 81 Utah 511, 20 P. (2d) 618; *Id.,* 87 Utah 336, 40 P. (2d) 188, and on rehearing in 87 Utah 358, 48 P. (2d) 1120. After the case of *Spencer* v. *Industrial Commission,* just referred to, had been decided by the court, there was, as alleged by Mr. Paul G. Ellis, attorney for Mr. Spencer, some delay on the part of the Industrial Commission in the making of an award to Spencer. When the award was made, the Industrial Commission made an allowance to Mr. Ellis as attorney's fee in the sum of $300.

Before the first petition to the Supreme Court had been filed, Mr. Spencer and Mr. Ellis had entered into a written agreement, to the effect that Mr. Ellis was to undertake and carry the matter to the Supreme Court and to a conclusion for a contingent fee of 50 per cent of the amount Spencer should receive in the event an award should be made to Spencer for his alleged disability. This agreement was made after the Industrial Commission had denied Spencer compensation, and before Mr. Ellis had appeared in the case.

The issues or claims are set forth in a stipulation by counsel as follows: ■

"It is hereby stipulated by and between Geo. Y. Wallace, as attorney for P. G. Ellis, and Bagley, Judd & Ray, as attorneys for Utah State Road Commission and The State Insurance Fund, that upon the hearing and disposition of the issues made upon the amended petition of P. G. Ellis it may be considered:

"1. That the Industrial Commission claims the right to fix and determine the fees of attorneys appearing in support of claims for compensation filed with the Industrial Commission, both for services rendered before the Commission and before the Supreme Court on certiorari.

"2. That the Commission claims that in fixing fees of attorneys appearing in matters coming before the Commission it may determine such fees without regard to any contracts made or entered between applicants for compensation and their attorneys for services rendered either before the Commission or before the Supreme Court on certiorari.

"3. That the Commission claims that an award of compensation made by it is not subject to any attorney's lien for services rendered by said attorney in procuring said compensation whether the attorney does or does not have a contract with the applicant fixing as between the applicant and the attorney the fees of such attorney.

"4. That the records and files pertaining to Claim No. 2985 may be considered by the Commission as a part of the record made on said amended petition.

"5. That the testimony of P. G. Ellis marked for identification Exhibit 'X' and made a part hereof may be considered by the Commission in so far as the same is competent, relevant and material.

"6. That the issues made by applicant's amended and supplemental petition and the answer thereto may be submitted for decision."

Paragraphs Nos. 1, 2, and 3 refer to the authority claimed to be vested in the Industrial Commission as to the matter of attorney's fees in cases arising before the commission. They are questions of law and may be considered on this review only if passed upon by the commission and included in the record before us for review. Paragraph No. 4 of the stipulation refers to file No. 2985, which is the number of the Spencer file in the matter of the application of Glen Spencer for compensation before the Industrial Commission and would appear to be only a matter to be referred to as evidence before the Industrial Commission, indicating some measure of the amount of work done by the attorney before the commission and on the reviews before the Supreme Court. Paragraph No. 5 stipulates that Mr. Ellis' testimony, in so far as competent, relevant, and material, may be considered by the commission. Paragraph No. 6 submits the matter to the Industrial Commission for decision.

The record is here for review, only upon the application of Mr. Ellis for review upon the matter of the determination by the Industrial Commission of the attorney's fee and the amount thereof. The commission fixed the fee of its own motion at the sum of $300. Later, and upon the petition and amended and supplemented petition of Mr. Ellis and the taking of testimony thereon and in pursuance thereof, the commission made findings and rendered a decision. The amount allowed for the services of Mr. Ellis as attorney in the Spencer Case was again fixed at the sum of $300.

Much is said in the briefs on file herein about the conflicting interests represented by the commission, and, as regarded by the applicant, the unfortunate setup in the administration of the Workmen's Compensation Law (42-1-1 et seq.), the State Insurance Fund, and kindred matters.

Any desired change in these matters is for the Legislature. If it be found that the policy established tends to work unfairness or injustice as to parties before the Industrial Commission, or fails in the accomplishment of the purposes of the law, application to the Legislature should be made to remedy the situation. We shall not further refer to the discussion of these matters.

Applicant maintains that the amount fixed by the commission is wholly inadequate and is not commensurate with the amount of labor expended, the time consumed, nor the value of the service performed. The fee was fixed by the commission by virtue of the authority conferred by section 42-1-81, R. S. Utah 1933. It is there provided:

"In all cases coming before the industrial commission in which attorneys have been employed, the commission is vested with full power to regulate and fix the fees of such attorneys."

That the commission originally fixed the attorney's fee without petition or the taking of testimony is of no consequence in this case, for the reason plaintiff herein later filed an application to have the commission fix the fee, at the same time objecting to the amount as fixed and questioning the authority of the commission to fix or determine attorney's fees for services rendered other than before the commission. Applicant also filed a supplemental and amended application and later filed a petition for a rehearing. It was, as heretofore shown, stipulated after testimony taken that "the records and files pertaining to Claim No. 2985 (the Spencer Case) may be considered by the commission as a part of the record made on the amended petition," also that the testimony of P. G. Ellis, which is included as a part of the record, might, in so far as competent, relevant, and material, be considered by the commission. During the taking of testimony, relative to attorney's fees and pursuant to the amended and supplemental application, counsel for plaintiff, among other things, stated:

"I think that section 42-1-81 empowers the Commission to fix the fees for services of an attorney on behalf of an applicant before it. I deny that that section, properly construed, empowers the Commission to fix fees for services of an attorney before the Supreme Court. I deny that the Commission under that section has the right to act arbitrarily in fixing fees, but can only fix the fees after taking testimony and making findings justified by the testimony."

That the fixing of an attorney's fee was before the commission for hearing and determination is clear; that testimony was taken on the issue is not open to question; that a decision was rendered is manifest from the petition for rehearing and the application to this court for a review of the decision. The question here for review is: May the Industrial Commission regulate and fix attorneys' fees in all cases coming before the commission in which an attorney has been employed? It is apparently conceded that the commission has power to regulate and fix the fees of attorneys in cases before the commission, barring arbitrary or capricious action on the part of the commission, but counsel for plaintiff divides that authority, limiting the power of the commission, first, to fix fees for services rendered while the cause is actually pending before the commission, and second, denying that the commission has authority to consider fees or services rendered in the proceeding before the Supreme Court.

We are of the opinion the distinction is not tenable. It is one cause. The review in effect either affirms or reverses the decision of the commission. No matter what the decision on the writ of review by the Supreme Court, the cause begins and ends with the Industrial Commission. This court does not direct the commission what orders or findings to make. It determines whether or not the commission was in error as to matters of law. Section 42-1-78, R. S. 1933; *Colonial Bldg & Loan Ass'n* v. *Industrial Comm.*, 85 Utah 65, 38 P. (2d) 737; *Ogden Union Ry. & Depot Co.* v. *Industrial Comm.*, 85 Utah 124, 38 P. (2d) 766; *Chase* v. *Industrial Comm.*, 81 Utah 141, 17 P. (2d) 205.

The power given to the commission to regulate and fix attorneys' fees includes all cases coming before the Industrial Commission in which attorneys have been employed. This power is vested in the commission by virtue of the statute, expressed in rather sweeping language. We do not find in this statute any power given to this court to regulate or fix attorneys' fees in industrial compensation cases, nor to do other than review the matter of attorneys' fees in the same manner and with the same limitations as the court may review any other decision of the Industrial Commission.

When an attorney has filed a petition either objecting to a fee fixed by the commission or asking ■ that a fee be fixed, he is entitled to ask for a rehearing thereon as provided by section 42-1-76, R. S. 1933, thus:

"Any party to a proceeding before the commission may, and before he can seek a review in the supreme court shall, within thirty days after written notice of its decision file an application before the commission for a rehearing of the matter."

The record reveals that the above section was complied with. The procedure for a review of the decision of the commission, the limitations and powers of review by the Supreme Court, and the limitations thereof are provided by sections 42-1-77 and 42-1-78, R. S. 1933, as follows:

"Within thirty days after notice that the application for a rehearing is denied, or, if the application is granted, within thirty days after notice of the rendition of the decision on the rehearing, any party affected thereby may apply to the supreme court for a writ of certiorari for the purpose of having the lawfulness of the original award or the award on rehearing inquired into and determined." Section 42-1-77.

"Such writ shall be made returnable not later than thirty days after the date of the issuance thereof, and shall direct the commission to certify its record, which shall include all the proceedings and the evidence taken in the case, to the court. On the return day the cause shall be heard unless for good cause the same is continued. No new or additional evidence may be introduced in such court, but the cause shall be heard on the record of the commission as certified by it. The review shall not be extended further than to determine:

"(1) Whether or not the commission acted without or in excess of its powers.

"(2) If findings of fact are made, whether or not such findings of fact support the award under review." Section 42-1-78.

The conclusiveness of the findings of the commission and the nature of the judgment to be entered by the court upon review are provided by section 42-1-79, R. S. 1933, which reads:

"The findings and conclusions of the commission on questions of fact shall be conclusive and final and shall not be subject to review; such questions of fact shall include ultimate facts and the findings and conclusions of the commission. The commission and every party to the action or proceeding before the commission shall have the right to appear in the review proceeding. Upon the hearing the court shall enter judgment either affirming or setting aside the award."

No construction of the Utah statute relating to the regulating or fixing of attorneys' fees by the commission has heretofore been made by this court. An examination of the statutes of other jurisdictions relating to attorneys' fees in workmen's compensation acts reveals that generally it is provided that claims for compensation under the acts are not assignable, that compensation and claims are exempt from claims of creditors, and claims of attorneys, physicians, hospitals, etc., for services under the act are subject to approval either by the commission, board, or department, or by the court making the award. Contracts relating to contingent fees are in certain instances recognized as legal, but the fee notwithstanding the contract is still subject to the approval of the commission or board or the court.

We are of the opinion that, although the contract for a 50 per cent attorney's fee was admitted as between the parties, it is not binding upon the commission in view of our statute on the subject. We think this is true notwithstanding the general statute (section 6-0-40, R. S. 1933) providing the compensation of an attorney and counselor for his services is governed by agreement, express or

implied, which is not restrained by law. Section 6-0-40 is a general statute, while section 42-1-81 is a special statute, and were there a conflict the latter would control as related to the special subject to which it applies.

In other jurisdictions, under statutes, some of which are of similar import, in none of which do we find the exact wording found in the Utah statute, and none which are as broadly sweeping in terms, the right of an Industrial Commission, board, or court to regulate, fix, or limit the fees of counsel contrary to contract terms has been challenged.

As indicative of the trend and attitude of the courts and bar upon the matter of compensation of attorneys in industrial compensation cases, we take the liberty of quoting rather liberally from the case of *Corbin* v. *Wilkinson,* 175 Okl. 247, 52 P. (2d) 45, 47, which in turn quotes from a New York case. The Oklahoma court says:

"The New York statute is almost identical with our own. *Matter of Fisch,* 188 App. Div. 525, 177 N. Y. S. 338, 342, is in point. Fisch, a lawyer, entered into a contract of employment with his client for 50 per cent of the award. Afterwards, the lawyer learned of the statute providing 'claims for legal services in connection with any claim arising under this chapter * * * shall not be enforceable unless approved by the commission. If so approved, such claim or claims shall become a lien upon the compensation awarded, but shall be paid therefrom only in the manner fixed by the commission.' Laws N. Y. 1914, c. 41, § 24. Thereupon, the lawyer informed his client that he would proceed no further before the Industrial Commission unless he received some security or guaranty that he would receive the 50 per cent agreed upon in the written contract. The client's brother then entered into a contract with the lawyer for the payment of the 50 per cent, and deposited $500 in order to guarantee the performance of the contract. An award was rendered for $864.90. The attorney's fee was fixed by the commission at $150. Check for the attorney fee was delivered to the lawyer, but he refused to accept, and brought suit on the contract with the brother. Judgment on the contract for the 50 per cent of the award was entered in the trial court. Apparently, neither the client nor his brother appealed; but, the bar association of the city of New York commenced proceedings in the nature of disbarment. In this proceeding, the New York Appellate Court said:

'We cannot approve a course of contract which appears to us to be a palpable evasion of one of the great purposes of the act. If it be understood that the courts approve the action of an attorney in procuring a third party to agree to pay to him an amount equal to 50 per cent of the recovery, it is quite obvious that that third party will in some way or other recover it from the workman, and so the workman will in the end be no better off in this regard than if this remedial legislation had not been passed. Members of the bar should honestly, straightforwardly, and sincerely aid in the carrying out of this beneficent legislation, and if they are unwilling to do the work for the amount allowed by the commission they should stand aside and let others do it."

In the case of *Yeiser* v. *Dysart,* 267 U. S. 540, 45 S. Ct. 399, 400, 69 L. Ed. 775, it is said:

"When we add the considerations that an attorney practices under a license from the State and that the subject-matter is a right created by statute it is obvious that the State may attach such conditions to the license in respect of such matters as it believes to be necessary in order to make it a public good."

We have heretofore indicated the limits imposed by statute upon this review.

The evidence consists of the written contract between Mr. Spencer and Mr. Ellis. We have indicated the commission is not bound by that contract. Applicant by his counsel and counsel for the State Insurance Fund stipulated that, if three attorneys, naming them, were called, they would testify

"that the fees provided for in the contract between Mr. Ellis and Mr. Spencer identified as Exhibit 'A' provide for fair, just and reasonable fees under the circumstances of the case. They would further testify that the sum of $300.00 allowed by the Commission was not a fair, reasonable and just fee for Mr. Ellis' services, but was less than that amount. They would further testify that the controlling factor in fixing fees in this case is the contingent element involved. They would further testify that a fee of $300.00 if intended to cover only Mr. Ellis' services before the Industrial Commission and not his services before the Supreme Court on review, that that amount would be less than a fair and reasonable fee; but that a fair and reasonable

fee for his services before the Commission alone irrespective of his services before the Supreme Court, considering the contingent element in the case, would be at least $500.00."

It was also stipulated as heretofore indicated:

"That the records and files pertaining to claim No. 2985 may be considered by the Commission as a part of the record made on the amended petition. That the testimony of P. G. Ellis marked for identification Exhibit 'X' and made a part hereof may be considered by the Commission in so far as the same is competent, relevant and material."

Mr. Ellis' testimony as contained in Exhibit X makes no reference to any amount other than as contained in the contract Exhibit A. His testimony details the interviews between himself and Mr. Spencer, the correspondence between himself, Spencer, and the commission, the negotiations for a settlement, the petitions and hearings before the commission and the Supreme Court, the typewriting of briefs, and a general and detailed history of the proceedings before the commission and in the Supreme Court.

The foregoing is a summary of all the evidence before the Industrial Commission relating to matters upon which the commission could base findings and a decision as to the amount to be allowed as attorney's fees.

The commission made findings, a large part of which are based upon the records and files. Because of the nature of this case, we deem it pertinent to quote the findings in full:

"This matter came on for hearing before the Industrial Commission of Utah on February 6, 1936, at ten o'clock A. M., in Room 414 State Capitol, Salt Lake City, Utah, upon the supplemental petition of P. G. Ellis, attorney for Glen Spencer, praying for an order of the Commission vacating the decision made and entered by the Commission on December 13, 1935, in so far as said decision relates to and fixes the attorney fees of P. G. Ellis for services rendered in connection with this matter. P. G. Ellis was present in person and represented by his attorney, George Y. Wallace. Glen Spencer was present in person, and the State Road Commission and the State Insurance Fund were represented by Paul H. Ray. Testimony was offered by

Mr. Spencer and by Mr. Ellis, and the parties hereto having filed their written pleadings and the matter having been submitted, the Commission makes the following findings of fact:

"Findings of Fact:

"I. That Glen Spencer filed an application with the Industrial Commission praying for compensation on account of injuries alleged to have occurred on or about the 9th day of April, 1932; that on June 24, 1932, the Industrial Commission of Utah rendered its decision denying compensation in said matter; that Spencer filed an application for rehearing, which application was on June 30, 1932, denied. That in about the month of July, 1932, Spencer employed P. G. Ellis, an attorney and counsellor at law, to represent him in said matter; that Ellis accepted such employment, and as attorney for Spencer procured a review in the proceedings had before the Commission by the Supreme Court of Utah, and on January 10, 1935, the Supreme Court of Utah annulled the decision of the Industrial Commission denying compensation; that the defendants applied to the Supreme Court of the State of Utah on September 12, 1935, again concluded that the decision of the Industrial Commission of Utah was erroneous and annulled the same.

"II. The Commission further finds that thereafter, on October 1, 1935, a motion was filed in behalf of Spencer setting the matter for rehearing before the Commission; that said matter was set for rehearing and the rehearing thereon was had before the Commission in the hearing room thereof at the State Capitol, Salt Lake City, Utah, on October 24, 1935.

"III. That thereafter, on the 13th day of December, 1935, the Commission rendered its decision in said matter wherein it made the following order:

" 'Wherefore, it is ordered, that compensation be and the same is hereby awarded to be paid to Glen Spencer by the Utah State Road Commission and or the State Insurance Fund at the rate of $12.12 per week beginning as of April 10, 1935, all accrued payments to be paid to the applicant in a lump sum and to continue thereafter once every four weeks until such time as the applicant has been discharged by the attending physician as surgically healed and his condition fixed, and in any event the payments are not to continue or to be paid to the applicant for a period to exceed 312 weeks from the date of the injury.

" 'It is further ordered, that the Utah State Road Commission and or the State Insurance Fund pay to Attorney P. G. Ellis, Felt Building, Salt Lake City, Utah, the sum of $300.00. This fee is fixed pursuant to title 42-1-81, Revised Statutes of Utah 1933. The said sum

of $300.00 is to be deducted from the accrued compensation due the applicant.'

"IV. The Commission further finds that the sum of $300.00 was paid to P. G. Ellis in accordance with said order and received by Ellis on the 14th day of December, 1935, and said payment has been held and retained ever since said time by the said Ellis.

"V. The Commission further finds that on the 14th day of December, 1935, the said Ellis filed his petition herein setting forth in substance that he had a written contract with Spencer fixing the terms of his compensation for services rendered to Spencer; that the award made by the Commission on account of services rendered by Ellis was not in accord with the terms of said written contract; that the Commission was without power to disregard said written contract and fix a fee for services other and different than that fixed by said contract; that the Commission was without power to fix and determine petitioner's fee without first giving notice to petitioner and conducting a hearing thereon; that the Commission was without power to fix and determine the amount of the fee to which petitioner was entitled for services rendered in the Supreme Court; that the petitioner has a lien upon the sum awarded to Spencer by said decision of December 13, 1935.

"VI. The Commission further finds that petitioner, P. G. Ellis, represented Spencer as attorney from about the month of July, 1932, to and including the 13th day of December, 1935; that as such attorney he appeared and represented applicant Spencer before the Supreme Court of the State of Utah and there filed written briefs and made oral arguments as shown by the records and files herein, and also before the Industrial Commission.

"VII. The Commission further finds that prior to the 13th day of December, 1933, one of the members of the Commission was informed that there was a purported written contract between Spencer and P. G. Ellis under and by the terms of which Spencer had agreed to pay Ellis in consideration for his services 50% of all compensation awarded by the Commission to Spencer for and on account of the alleged injury of April 9, 1932.

"VIII. The Commission further finds that on July 21, 1921, it adopted resolution No. 1724, which reads as follows:

" 'I move that attorneys' fee in compensation cases be rated on the basis of ten dollars ($10.00) as a minimum fee, plus five per cent (5%) of the total amount awarded; provided, that in each case where the above rating would be unjust to the parties concerned, the Commission will exercise its discretion in estimating the fee allowed.'

"IX. The Commission further finds that in fixing the sum of $300.00 as attorney fees to be paid to P. G. Ellis for his services rendered in behalf of Spencer in this matter it intended to cover his services rendered before the Industrial Commission and before the Supreme Court of Utah and determined that $300.00 was a fair fee for said services."

We have heretofore held that the Industrial Commission is not bound to accept the opinion of a physician testifying as an expert unless such was the only reasonable conclusion to reach in the premises. *Utah Delaware Min. Co.* v. *Industrial Comm.*, 76 Utah 187, 289 P. 94. We see no good reason why the same rule should not apply to other expert opinion evidence. The rule is definitely settled that, unless the Commission arbitrarily and capriciously disregards competent, material, and substantial evidence, if there is competent, material evidence to support the decision of the commission, it will not be disturbed by the Supreme Court. This has been many times affirmed as settled law in this jurisdiction. That we may not agree as to the amount allowed or think it should have been a greater amount is beside the question. We are without authority to change it in the instant case. It is not necessary to cite the cases.

In view of the provision of the statute giving the commission authority to fix and regulate fees of attorneys for services under the act, and that it is manifest from all the statutes and cases upon the matter that the fees should be measured according to the workingman's station, a different measure should be applied than in contingent fee cases in court, or upon contracts based upon unliquidated claims. That Mr. Ellis has done an unusual amount of work on the case and, if measured by the standard of contingent fees allowed in court trials for personal injury cases, no charge could be laid as to the contract being unfair or not in accordance with the practice other than in industrial cases, considering the elements and work involved in the Spencer Case, is conceded. Fees for attorneys and

doctors and others rendering services in cases before the Industrial Commission are not measured by the same standard of measurement as in legal proceedings before courts or other bodies than those administering workmen's compensation acts. Under the Workmen's Compensation Act, if an injured employee is entitled to recover at all, the amount is fixed and definite, not contingent. The proceedings under the law are intended to be direct, informal, summary, and inexpensive. If the commission under the powers given by the statute concluded that the circumstances of the case were extraordinary and justified the allowing of a lien, we are not prepared to say it might not do so under the broad power given to "regulate and fix" attorneys' fees in all cases coming before the commission. There is no occasion in the instant case for the discussion of any conflicts arising between the attorneys' lien statute and the sections of the Industrial Act. There is evidence in the record that called upon the commission to weigh it and determine the amount to be allowed as attorney's fee. We cannot say that the evidence is of such character as to show that the commission acted unreasonably, arbitrarily, or capriciously so as to make the question one of law. We may not weigh the evidence. An award has been made. The fee has been fixed and paid. We cannot say the commission acted without or in excess of its powers. Neither can we say the findings of fact do not support the award under review. There was evidence submitted to the commission such as to require it to make an award. There was other evidence than the opinion evidence of attorneys from which the commission might determine the amount of the fee. Opinions of attorneys of necessity must be based largely upon the record and as stated by them the contingent element. The commission had before it all of the subject matter for consideration. We cannot say the commission was bound to accept the opinion evidence to the exclusion of the other evidence in the record. *Utah Delaware Min. Co.* v. *Industrial Comm.*, supra; *Ostler* v. *Industrial Comm.*, 84 Utah 428, 36 P. (2d)

95; *Harness* v. *Industrial Comm.*, 81 Utah 276, 17 P. (2d) 277.

Other related questions might be discussed and additional authorities cited. The fundamental issue of the power to regulate and fix attorneys' fees by the commission in industrial cases is disposed of. The related questions need not be discussed.

The award is affirmed.

FOLLAND, Justice (concurring).

I concur in the opinion of Mr. Justice MOFFAT, and in so doing say that I feel as keenly as my dissenting associates that the attorney's fee fixed by the commission is altogether too low. We do not sustain the commission's action because we are of the opinion it has fixed a reasonable fee, but because the statute vests in the commission the power to fix and regulate attorneys' fees in this kind of cases, and its action was not wholly arbitrary and capricious. The statute says nothing about an adequate fee or about reasonable fees, but does say that in all cases coming before the Industrial Commission in which attorneys have been employed the commission is vested with full power to regulate and fix the fees of such attorneys. Possibly a reasonable or adequate fee is contemplated. At any rate, the fee should bear some reasonable relationship to the quality and amount of service. The discretion to fix a fee is by law rightly in the commission, however, and not in this court. I have had in mind some such rule as this: That where the circumstances call for a substantial fee, the commission would be acting arbitrarily if it fixed a merely nominal fee. Here, however, the fee awarded is a substantial sum, although we are all agreed it is grossly inadequate. Had this court fixed the fee, it would be somewhat in excess of $600 instead of $300 as fixed by the commission.

All I see in this is merely a difference of opinion as to what a reasonable or adequate fee should be under the cir-

cumstances. If we substitute our judgment as to reasonableness for that of the commission, the statute is wholly dissipated. The whole policy of the Workmen's Compensation Act is and was, whether we lawyers like it or not, to get away from the uncertainty of recovery in personal injury cases and the high attorneys' fees incident in cases where recovery was had. The cheaper and more certain and sound method was devised whereby the workman was assured of compensation over a wider range but in smaller amounts. It is but natural that the commission, having responsibility of the administration of the act, should fix what is reasonable with regard to professional fees in the lower brackets, because its viewpoint is that of the injured or deceased workman and his dependents, while we look at the matter rather from the viewpoint of the lawyer whom we regard as entitled to a fee worthy of his hire. This, however, is merely a difference of opinion as to what is a reasonable fee. If we apply the carefully worked-out rule announced in *Norris* v. *Industrial Comm.*, 90 Utah 256, 61 P. (2d) 413, it seems to me the position of the commission must be sustained. That rule will amount to very little if it is made to depend on differences of opinion as to the reasonableness of professional fees.

EPHRAIM HANSON, Justice (concurring).

I concur in the views expressed in the prevailing opinion of Mr. Justice MOFFAT and in the concurring opinion of Mr. Justice FOLLAND.

WOLFE, Justice (concurring in part, dissenting in part).

I agree that the Industrial Commission has authority to fix fees for services performed before the commission and before this court on review. It will be noted what is now section 42-1-81, R. S. 1933, came into existence as an amendment to section 3148, Comp. Laws Utah 1917, which dealt with reviews before the Supreme Court. It was added as an

additional subsection to section 3148 by chapter 67, Laws of Utah 1921. I also agree that the commission in fixing the fee may ignore a contract between the applicant and the attorney as to the amount of the fee.

I think the statutes read together do not permit of the construction that the attorney has a lien on the compensation for his fee, for the statute states, among other things, that compensation shall be paid only to employes or their dependents. What is now section 42-1-74 was in the original compensation law passed in 1917 (see section 3146, Comp. Laws Utah 1917). It was intended that compensation money, because of the necessities of the case, be applied to current maintenance of the family and not past debts. In 1921, as stated above, the Legislature added what is now section 42-1-81 as a part of the old section 3148 of Comp. Laws 1917 in order to regulate the attorney's fee and prevent attorneys from charging such a fee as would partially defeat the purposes of the act by inducing the applicant who would feel morally bound or through gratefulness to turn over too great a portion of his compensation. Before 1921, the attorney certainly did not have a lien on the compensation, for it would be foolish to construe the statute which said an award should be paid only to employes or their dependents as giving some one a lien on such compensation. A lien on a money obligation due to a third party, which is not enforceable in the hands of the obligor, is a snare and a delusion. When subsection (e) was added in 1921 to section 3148, it did not affect what was then section 3146 of Comp. Laws 1917 (now section 42-1-74). It simply gave the commission full power to regulate and fix the amount which the attorney could charge and collect from the applicant. Perhaps as regards an applicant who has nothing, this amounts to "keeping the word of promise to the ear and breaking it to the hope" (liberties with the quotation are mine), but such injustice must be remedied by the Legislature if the commission is to be required to carve the fee

which it has fixed out of the compensation and pay to the attorney without the consent of the applicant. The fact is that the wording of section 42-1-81, R. S. 1933, does not confine the commission's power to fix fees only in cases where the applicant wins, but gives it "full power" to do so in "all cases coming before the industrial commission."

I think the commission may on first instance fix an attorney's fee without hearing, but that, if the attorney is not satisfied, a hearing on the amount of work he has done should be granted. The commission may, by rule, after the fixing and notification of the amount of the fee, set a time in which the attorney may ask for a hearing. Weekly compensation need not by such hearing be delayed and the rather infrequent cases of commuted payments will ordinarily not be delayed past the usual time that is required to arrive at them.

The difficult part of this case is as to whether we can say as a matter of law that a fee of $300 for the work in this case is unreasonable. The fact of what is a reasonable attorney's fee is different from the ordinary fact to be found by the commission. For instance, on determining whether an accident occurred in the course of the employment, the commission ordinarily makes a deduction only from what we called in *McDonald* v. *Soule,* 87 Utah 580, 52 P. (2d) 1103, "sense" facts. It may be that the commission must also include in its basis for deduction legal principles as well as sense facts. Thus, legal principles may have to be applied to determine whether a relationship of employer and employe exists as part of the ultimate conclusion of whether or not an accident arose in the course of an employment. In the case of fixing a fee, however, another sort of factor enters—that is, one of experience which the commission may or may not possess. Knowledge of compensation in certain fields of human endeavor is really based on experience. It is the entrance of this factor into the finding which I think differentiates it from the case of *Norris* v. *Industrial Comm.*

90 Utah 256, 61 P. (2d) 413. But the rule announced in that case applies in support of the commission when it failed to follow the uncontradicted expert testimony.

In the fields of skilled or unskilled labor, this knowledge may easily be a part of the commission's knowledge, and even in the field of medicine the matter of office and house calls, and to a certain extent operations, may be to an extent standardized, becoming less and less so as the operation becomes more intricate and rare. Even in the matter of surgeons' fees for many operations, there is considerable variation, depending upon the surgeon, the wealth of the patient, etc. In the field of law there is much less standardization except along certain lines. The fee for a default divorce, for the ordinary examination of an abstract, etc., has become somewhat standardized by custom, but even here there are departures depending on special circumstances or the increased ability to pay. But in the vaster provinces of the law fees cannot be standardized because every case differs in its intricacies, in time required, in amount and responsibility involved, in results obtained, in types of clients to deal with, in co-operation or lack of it by clients, ingenuity and diligence used, probability or improbability of recovery. The present is an illustration. It took really three hearings before the Supreme Court to finally dispose of this case. And the effort to show the application of old principles to a new set of facts entailed much legal research and thought. The matter of a reasonable fee is governed largely by custom and relationship with other commensurate tasks. Only experience can furnish this information, and yet I do not believe that the commission would be required to find according to the testimony of lawyer witnesses who supposedly testify from their experience. The commission itself must have some knowledge of legal fees. And there are other factors which may equally control its conclusions as the testimony of attorney experience.

It would be well perhaps if some standardization of fees could be arrived at. Some attorneys obtain too little for

good work and some others too much. For poor work, any fee is too much. But in the highly specialized fields of human endeavor, such as music, art, medicine, science, law, literature, there can be very little attempt at standardization. The services rendered are too personal to admit of it. The individuals pursuing these lines vary so much and the abilities and uniqueness of their work vary with the individuals. If the test was the social benefits derived from the work, entirely different compensation might be arrived at. Perhaps the man who digs a sewer confers a social benefit greater than much of the legal work done. Constructive legal work, such as the competent drafting of needed laws, is of great benefit to the community. The competent drafting of a contract—a private law governing the conduct of persons engaged in a transaction supposedly for their mutual benefit which prevents misunderstandings—is constructive work. But it is very difficult to measure the social benefits of legal advice and legal work in relation to other work in our human life. Regardless of whether it is of a type socially less beneficial than many other kinds of work, a training and experience requiring many years are usually involved. These are elements in the charge. If it were possible to appraise the cost of a lawyer's education and training and put those factors in an hourly or per diem charge for work, together with office expenses, together with an increment which would permit him to live in his station in life, adding a factor for necessary lost motion and time consumed in unremunerative matters, so as at the end of a year to bring him out with office and living expenses paid, some return of the money spent on education, and some laid aside for the inevitable rainy day and old age, we might approach more nearly, if not to a comparative compensation for social benefits bestowed, at least to some better averaging of the compensation of the various members of the bar. But the very statement of such a mode reveals the almost impossibility of its working out. Perhaps the only feasible method is to attempt to discover what other lawyers

practicing in the same locality would consider reasonable, but the commission and, a fortiori, the courts are not required to follow this opinion if in their judgment they think the amount testified to unreasonable. For that reason, the commission was not required to find according to the expert testimony introduced by Mr. Ellis.

This recital of the factors and difficulties entering into the fixing of fees by the courts in the general field of the law makes it quite apparent that there may be much variation of conclusion by courts as to what is a reasonable fee. As suggested above, in the field of compensation, additional factors enter which may affect the compensation for the work and services as compared to the compensation for the same amount of time, work, and services in other fields of the law. And, where the tribunal has the task of determining what is "reasonable," I do not think we can overturn its findings as arbitrary, even though we have a different idea as to what is reasonable, unless the finding in that regard is so clearly unreasonable that we could say no mind reasonably functioning should have arrived at such conclusion. *Los Angeles & S. L. R. Co.* v. *Public Utilities Comm.*, 80 Utah 455, at page 472, 15 P. (2d) 358. But in this case, from our own knowledge of what sort of a case Mr. Ellis had to handle, how he literally snatched it from the jaws of judicial death, and the work he was required to put upon it, gained from its actual advent before us, I think we can say not only that we think the fee fixed by the commission was not a reasonable one, which is not the test, but that as a matter of law the fee fixed was one which no person could reasonably say was reasonable. In consequence, in that respect, the commission acted arbitrarily because, as said in the case of *Norris* v. *Industrial Comm.*, 90 Utah 256, 61 P. (2d) 413, another way of saying that the commission acted arbitrarily is to say that it acted in the particular matter under consideration as no reasonable commission reasonably acting and functioning would act.

It is said that by the rule laid down in the Norris Case we must sustain the commission. I certainly should not be the one to weaken the force of that rule, but I think it is not applicable to the peculiar situation of this case. I attempted to point out above that the fact to be found by the commission in this case is, "What is a reasonable attorney's fee for Mr. Ellis in this case?" and that it contained a factor not present in the conclusions of the commission on the ordinary facts found by it. I think we must assume that the Legislature meant to require the commission to fix a fee which would be reasonable under all the circumstances of the case, one of which circumstances would be the fact that it was a compensation matter. In the ascertainment of reasonableness comes an element of experience with attorney's fees which the commission must supply by expert testimony or from its own knowledge, if it claims to have such knowledge. It did not and was not compelled to follow the unanimous and uncontradicted testimony of the attorneys who testified as to a reasonable fee. *Norris* v. *Industrial Comm.*, supra. Therefore it must have purported to supply this element of experience as to a reasonable attorney's fee from its own knowledge. As lawyers, we can, in view of our personal knowledge of Mr. Ellis' services actually involved in the case in its phases before this court, in addition to the testimony of those services in the record on his appeal, say as a matter of law that $300 was not only in our opinion not reasonable (which is not the test), but that no mind working reasonably could so find. In other words, it was outside the zone in which reasonable minds could differ in their conclusions and yet be upheld by this court, whether one or the other conclusion within that zone was arrived at. It must be noted that the Norris Case laid down a rule which defined certain conditions which must, at least, be met before we could reverse a case even where the evidence was uncontradicted. And, of course, where the evidence is in conflict, we would not reverse a case unless it came under the rule hereunder set out.

In stating that in this case we will not reverse the commission because of the uncontradicted testimony of the attorneys, we actually recognize and hold to the force of that rule. But I assume that whether the evidence is uncontradicted or contradicted, where the conclusion of the commission is one which we conclude no reasonable mind sitting as a commission could come to under the evidence, it becomes a matter of law and we will reverse it. As a matter of fact, the converse of the rule in the Norris Case furnishes one of the tests of when we will say that the commission concluded as no reasonable commission could conclude i. e., that when the evidence is uncontradicted and not wholly by interested parties, and the record shows no bias on the part of the other witnesses and the uncontradicted evidence carries conviction and sustains the burden of proof and precludes any other explanation as being more or equally reasonable, and the commission has still found against such uncontradicted evidence, then we will say that it concluded as no reasonable commission could conclude and reverse it. This is the same as saying that the commission acted arbitrarily.

The difference between the CHIEF JUSTICE and myself on the one hand, and our colleagues on the other, is not as to this principle, but really as to where the point is in the amount of the fee at which we can say that no reasonably working mind could say that it was reasonable. I do not think it is, as said by Mr. Justice FOLLAND, that we differ in our opinions as to reasonableness of professional fees. It is more than that. It is that we differ as to the point at which any reasonable mind could say it was a reasonable fee.

It is admitted that, if the fee had been fixed at a nominal amount, it could be so held. We think that it can be still so said, in view of our own knowledge and experience, when it was fixed at only $300. This is the real essence of the difference between our viewpoints. I frankly admit that in this case one is perhaps as equally as tenable as the other. It is perhaps just as valid a view that $300 is not so low as

to make it possible for us to say that no reasonable mind could consider it a reasonable fee for this work as it is to say that it is so low that every reasonable mind, having knowledge of the experiences as to fees, would say it was not reasonable. The latter view has the additional merit of doing justice in this case. Probably the cases will be rare where it will be as difficult to say whether or not no reasonable person could have come to the same conclusion as did the commission in this case.

I therefore dissent from that part of the prevailing opinion as holds that we should sustain the commission in its finding that $300 is a reasonable fee.

ELIAS HANSEN, Chief Justice (dissenting).

The statutory provisions which are here brought in question provide:

"In all cases coming before the industrial commission in which attorneys have been employed, the commission is vested with full power to regulate and fix the fees of such attorneys." R. S. Utah 1933, 42-1-81.

"Compensation before payment shall be exempt from all claims of creditors, and from attachment or execution, and shall be paid only to employees or their dependents." R. S. 1933, 42-1-74.

"The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and to the proceeds thereof in whosesoever hands they may come, and cannot be affected by any settlement between the parties before or after judgment." R. S. 1933, 6-0-40.

I concur in the views expressed in the prevailing opinion that the Industrial Commission has jurisdiction to fix the fees of an attorney who has been employed in a case coming before the commission and such jurisdiction extends to the

fixing of fees for services rendered in this court. Plaintiff seeks to distinguish the cause while it is before the commission from the cause when it is brought before this court for review. It is true, upon review, that the plaintiff before the commission may become the defendant upon the review and vice versa, and that in this court the commission is usually made a party defendant, even though it was not a party in the initial proceeding. However, the cause in its final analysis is the same. The review made by this court is on the record made before the commission. To hold that the commission is without jurisdiction to fix fees for services rendered in this court would lead to endless confusion. An illustration will serve to make clear what is meant. The cause is brought to this court for review by an applicant who has been denied compensation. The applicant is successful in having the order denying an award vacated and the cause remanded to the commission. Upon a rehearing, an award is granted by the commission, and thereupon it becomes the duty of the commission to fix a fee for the attorney for the applicant. It is difficult to perceive how in such a case the commission may properly perform its duty of fixing the attorney's fee unless it may take into consideration the services rendered by the attorney in this court. In such case it would be idle to contend that the commission should seek an opinion from this court before it is authorized to act upon the matter of fixing the attorney's fee. There is no warrant in law or in reason for such a procedure.

I am also in accord with the holding of the prevailing opinion to the effect that, the statutes having vested the commission with full power in all cases to regulate and fix fees of attorneys employed by applicants, the courts may not limit the authority of the commission only to cases where a fee has not been agreed upon by the applicant and his attorney. Such a construction would do violence to the language used. If the Legislature intended to so limit the

power of the commission, it would have been a simple matter to have so expressed its intention.

I, however, do not agree with the contention made on behalf of the commission to the effect that a proper construction of section 42-1-74, R. S. 1933, precludes the commission (in the absence of the consent of the employee or his dependents) from paying to the attorney the fee fixed by it. If such construction is given to that provision, it is difficult to perceive how an attorney is to be sure of anything in the event the employee or his dependents refuse to give consent to the payment thereof. To vest the commission with power to fix an attorney's fee, and at the same time deprive the commission and the attorney of the right to enforce the payment thereof, is contrary to all principles of natural justice and certainly flies in the face of those provisions of section 6-0-40, R. S. 1933, which give an attorney a lien on his client's cause of action. It is a matter of common knowledge that many employees and their dependents who receive awards of compensation own no property that can be reached by execution. The applicant in this case is apparently in that class. If an attorney is without right to insist upon payment of his fees out of the fund created by his labors, many employees and their dependents may well find it impossible to secure necessary aid to present their claims for compensation, no matter how meritorious such claims may be. The members of the commission may be ever so solicitous to protect the rights of an applicant. Still, if the applicant seeks a review in this court of an adverse decision, the aid of an attorney is imperative. The provisions of section 42-1-74, R. S. 1933, were intended as a shield to protect employees and their dependents and not as a sword to defraud attorneys out of their just fees. The authorities generally are to the effect that property acquired by a client as the result of litigation, although exempt when so acquired, is none the less held subject to a lien in favor of the attorney who conducted the litigation which enabled the client

to acquire the property. 6 C. J. 781 et seq.; *Hampton* v. *Hampton*, 85 Utah 338, 39 P. (2d) 703. Viewed in the light of such doctrine, section 42-1-74 is not in conflict with that part of section 6-0-40 which provides for an attorney's lien. In such case, both provisions of our statutes must be given effect. If an attorney has a right to look for his compensation to the award which he has secured for his client, then and in such case the attorney is something more than a creditor. When the fee is fixed, the amount thereof becomes the property of the attorney. Payment to an attorney of that which is his does not offend against that provision of section 42-1-74, which requires that "compensation * * * shall be paid only to employees and their dependents."

I am thus of the opinion that Mr. Ellis had an attorney's lien upon the award made in favor of Mr. Spencer and that, when the amount of the fee was fixed, the commission had authority and it was its duty to pay the same to Mr. Ellis without the consent of Mr. Spencer. In this connection, it may be noted that, when funds upon which an attorney's lien is claimed come into the hands of the commission, good practice requires that the commission set a time and place for fixing the amount of the lien and that the persons interested be given notice thereof. Anything short of that is contrary to approved procedure.

I am unable to agree with my associates that we should not interfere with the order fixing the fee of Mr. Ellis at $300. That Mr. Spencer would not have received anything whatsoever except for the able and untiring efforts of Mr. Ellis is not open to doubt. Mr. Ellis received but $13 from Mr. Spencer towards paying the expenses of the litigation. In addition to the hearings had before the commission, the cause was brought before this court upon two occasions for review. The opinion evidence of reputable attorneys offered and received before the commission is by no means the only evidence presented to the commission. There was the contract in which Mr. Spencer agreed to pay to Mr. Ellis

one-half of any award he might secure. No claim is made that Mr. Ellis overreached Mr. Spencer. On the contrary, the evidence tends to show that Mr. Ellis was reluctant to accept employment on the terms finally agreed upon. Notwithstanding Mr. Spencer was unable to pay all that was agreed upon towards taking care of the expenses of the litigation, Mr. Ellis faithfully and with outstanding thoroughness and ability carried out his part of the contract. The great amount of work required of Mr. Ellis is indisputably shown by the briefs filed in the cause in this court. The work was begun and carried on to successful termination in spite of the fact that Mr. Ellis knew his efforts would be unrewarded if he failed to secure compensation for his client. The award obtained, namely, $12.12 a week for at least a period of six years was very beneficial to Mr. Spencer. The evidence indisputably shows that the attorney fee allowed is grossly inadequate, even though due allowance be made for the fact that this is a workmen's compensation case. If the applicant had been unfairly dealt with in the matter of fixing the fee this court should and doubtless would remedy the injustice. The same consideration should be accorded the attorney.

While this court may not fix a fee, I can see no good reason why a minimum and a maximum fee to be allowed under a given state of facts may not be suggested by this court on the first review of a controversy with respect thereto. Otherwise the cause may be repeatedly brought to this court for a review of any subsequent fee that may be fixed by the commission. In my opinion, this record conclusively shows that Mr. Ellis is entitled to an attorney fee in the total amount of not less than $600 for the services rendered in securing workmen's compensation for Mr. Spencer. The commission still has funds under its control from which the remainder of such fee may be paid.

For these reasons, I dissent.