# In re HATCH.

No. 6800.   Decided July 30, 1945.   (160 P. 2d 961.)

See 7 C. J. S., Attorney and Client, sec. 38; Disbarment for failure to account for money of client, note 43 A. L. R., 54. See, also, 5 Am. Jur., 423.

*L. C. Montgomery,* of Heber, and *J. Louis Brown,* of Salt Lake City, for petitioner.

*William M. McCrea, Lynn S. Richards,* and *L. O. Thomas,* all of Salt Lake City, for Utah State Bar.

WOLFE, Justice.

Petition by Glen S. Hatch, an attorney, for review of the recommendation of the Board of Commissioners of the Utah State Bar that petitioner be punished for unprofessional conduct.

The petitioner is an attorney and counsellor at law in the state of Utah.  A formal complaint was filed by the Board of Commissioners accusing the petitioner of unprofessional conduct.  A hearing was held on February 11, 1944, after which the Board of Commissioners found that the petitioner

was guilty of unprofessional conduct and recommended to the Supreme Court that an order be entered suspending the petitioner from the practice of law in this state for a period of one year. Pursuant to the Revised Rules of Discipline of the Utah State Bar, heretofore approved by this court, the petitioner filed a petition for review of the findings, conclusions and recommendation of the Board.

The complaint is in two counts. The first count charges and the evidence shows that the petitioner was retained by William and Arillie Stott to represent them in a proceeding before the Industrial Commission; that the petitioner appeared as attorney for the Stotts and was awarded the sum of $50 as attorney's fees for his services in that proceeding; that at no time did the petitioner apply to the Industrial Commission for an additional allowance as attorney's fees; that he accepted the $50 and thereafter procured from the Stotts an additional amount in excess of $200 for the legal services in connection with said proceeding. That the collection of this additional amount was in violation of the provisions of Sec. 42-1-81, U. C. A. 1943, which gives the Industrial Commission authority to fix and regulate the fees of attorneys in all cases before the commission. The method of collecting the excess was by use of a third party intermediary. The Board of Commissioners found that the method used to collect the additional amount was a mere subterfuge adopted to avoid and circumvent the provisions of Sec. 42-1-81. This later finding correctly reflects the evidence. The petitioner knew that the commission had the power to regulate attorney fees, but thought that the fee usually awarded by the commission to an attorney was inadequate. He therefore, as a condition to accepting employment in the case by the Stotts, worked out a method whereby he could collect fees in addition to the amount awarded by the commission and in violation of the statute.

The second count related to the collection of money from a client for the purpose of paying it to an attorney for a third party and the retention of that money for nearly

four years by the petitioner. One Dermont Casper employed the petitioner in connection with the settlement by Casper of his obligation under a stipulation and judgment in a divorce proceeding. By the terms of the stipulation and judgment Casper was to pay a total of $77 to the Relief Society of the Utah Stake of the Church of Jesus Christ of Latter-Day Saints for the use and benefit of his minor child and Mildred Casper, his former wife. In addition, Casper was required to pay the sum of $50 to W. S. Dunford, attorney for Mildred Casper. The petitioner, after being retained by Casper, collected a total of at least $180 from Casper. There is evidence that he collected a larger amount, but it is admitted that he collected at least $180. He paid $30 of this amount over to W. S. Dunford, an attorney, to discharge Casper's obligation as noted above. Arrangements were made to pay the $97 balance to Dunford by installments. No further payments were made by the petitioner. He had $150 to cover the $97 balance to Dunford and his attorney fee. The petitioner testified that $50 to $75 would have been a reasonable attorney's fee for his services in connection with this matter. Some four years later the petitioner and Mr. Casper agreed that the petitioner was still holding $85 of the petitioner's money over and above the attorney's fee.

The evidence thus stands uncontradicted that petitioner retained the sum of $85 for approximately four years without either paying it in discharge of Mr. Casper's obligation or requesting instructions from his client for its disposition. As noted by the findings:

"Mr. Hatch [petitioner] seeks to justify his failure to comply with the provisions of his agreement with Mr. Dunford on the grounds, first, that he was going to attempt to get attorney Dunford to settle for less than the One Hundred and Twenty-seven ($127.00) Dollars agreed upon and, second, that he did not wish to make partial payments but expected to obtain and keep in his possession the money collected from Casper until he had sufficient funds to discharge the entire obligation and obtain a dismissal of the case and release in full of the obligation. There is no evidence in the record that Hatch at any time attempted to settle the case for a lesser amount than

that agreed upon. * * * In September, 1936, action was started in the Provo City Court against Dermont Casper, charging him with willful neglect and failure to provide for his wife and child. The warrant was in the hands of the sheriff for the arrest of Casper. Mr. Dunford, as County Attorney, upon the receipt of the Thirty ($30.00) Dollars paid on April 29, 1937, by the said Glen S. Hatch ceased in his efforts to have Dermont Casper arrested. Mr. Hatch knew that his client, Dermont Casper, upon failure to comply with his stipulation by his attorney and Mr. Dunford was subject to citation for contempt in the divorce action or perhaps subject to arrest under the criminal action in the Provo City Court. He exposed his client, Dermont Casper, to this risk rather than to pay the second installment to Mr. Dunford on July 1, 1937, when he had the funds in his hands to do so."

Both of the above matters show unprofessional conduct on the part of the petitioner. We decided in *Ellis* v. *Ind. Comm.*, 91 Utah 432, 64 P. 2d 363, that the Industrial Commission could, under Sec. 42-1-81, fix the attorney's fee to be allowed for a proceeding before the Industrial Commission and that in doing so it was not bound by any contract made between the parties. The petitioner knew that the Commission had the power to fix the fees and that he could not directly by contract fix a different fee. The procedure adopted by petitioner to collect higher fee than the Industrial Commission allowed was illegal and the petitioner knew it. As to the collection of the money from Casper, petitioner had a duty to his client to either pay the money collected over to W. S. Dunford as agreed or to return it to his client. The holding of this money for nearly four years was not motivated by any intention to protect the client's interest. He violated common rules of honesty and good faith. The recommendation of the Board of Commissioners is fully justified.

It is therefore ordered that Mr. Glen S. Hatch be suspended from the practice of law in the State of Utah for a period of one year from the date of the issuance of the remittitur herein and until he is reinstated upon recommendation of the Board of Commissioners of the Utah State Bar, and that he return to William and Arillie Stott the

fees in excess of the amount allowed by the Industrial Commission and that he pay to the Utah State Bar all costs expended by it in the prosecution of the charges against him.

McDONOUGH and WADE, JJ, concur.

LARSON, Chief Justice (concurring).

I concur in the order and most of what is said in the opinion. But I do not concur in the implications involved with respect to Section 42-1-81, U. C. A. 1943. I must concede that the opinion properly reflects the interpretation of the section as made by this court in *Ellis* v. *Ind. Comm.*, 91 Utah 432, 64 P. 2d 363. We there held that under the section noted the Industrial Commission could fix the fee any attorney could collect for services rendered in connection with any cause which at any stage came before the commission, regardless of any contract made between the parties. To follow the rationale by which that view was reached would be a job for a "Philadelphia lawyer." It seems to me the Ellis case misconstrues, misinterprets and misapplies the section. As there construed, grave doubts arise as to its constitutionality. I think the plain purpose of the section was twofold: (a) To permit the commission to impose upon the employer or insurance carrier, in addition to the award made to the workman, an attorney's fee where it was necessary for the claimant to employ an attorney to establish his right to compensation, the same as the commission allows doctor fees and hospital and medical charges. (b) To fix the amount, if any, that an attorney may receive for his services out of the money paid to the workman as compensation. Payments under the compensation acts are in the nature of trust funds not subject to garnishment, execution or other liens except as may be allowed by the commission. This accords with the general rule that charges for services cannot be made against trust funds except as allowed by the court. The rule does not prevent a trustee from paying such charges from any other funds he may have not involved in the trust.

That an attorney should not be permitted to make a contract for payment to him of any part of the award made to the claimant, other than such as may be allowed by the commission, is clear. He should not be permitted to make or enforce any contract by which charges are paid him or anyone else out of a trust fund unless such charge and payment are first authorized by the legal authority having control or administration of the trust. And if an attorney may not do so directly, to do so by resort to subterfuge and indirect means would not only be unlawful but would certainly be unprofessional conduct. Uberrima fides is an inherent factor in all professional actions of a lawyer. But I see no reason in a position that an attorney may not in good faith make and enforce a contract for compensation for his services as long as he does not collect the same from nor receive in satisfaction thereof, moneys paid to the workman as compensation under the act. As a comment aside, construing the section as was done in the Ellis case, when the commission fixes the total fees which claimant's attorney may receive from any and all sources for his services, it should also fix the total fee the attorneys for the employer and the insurance carrier may receive for their services in connection with the cause. To do otherwise is to put the workman at a disadvantage because he must often depend on an attorney who cannot afford to devote the time and effort necessary to find and present the material evidence while well paid attorneys for the employer and carrier often with big staffs can gather any and all salient facts and evidence and present such as they deem pertinent to the issues upon which they rely. If the commission seeks to fix fees for any counsel, it would seem they should fix for all to keep the parties on a par.

In the instant case the Bar Commission found, and the evidence sustains the finding, that Hatch knowingly sought and received payment for his services from money paid his client as compensation benefits, in excess of that allowed by the commission. This was unprofessional conduct.

TURNER, J., not participating.