HUTCHINGS v. INDUSTRIAL COMMISSION et al.

No. 6064. Decided February 14, 1939. (87 Pac. 2d 11.)

*Joseph G. Jeppson* and *George A. Faust,* both of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *F. A. Trottier,* of Salt Lake City, for defendants.

LARSON, Justice.

Certiorari to the Industrial Commission to review an order of the Commission denying compensation to the applicant for the death of her husband, Samuel Walter Hutchings, hereinafter referred to as deceased. The essential facts are as follows: Deceased, about 37 years of age, was employed by Bountiful City as manager of its electric light plant. On December 10, 1937, deceased was fixing a switch board for the City when his left elbow came in contact with a live wire, causing third degree burns upon his left arm and right hand, and resultant shock. As a result he was confined to his home until January 15, 1938 under the care of Dr. J. C. Stocks, his personal physician, at which time he returned to his employment doing light work in the office.

For a period of four or five years prior to the accident deceased had suffered from stomach trouble and digestive disturbances, and in the spring of 1937 had been advised by Dr. Stocks to submit to an operation. His digestive trouble reached such an acute stage that an operation became necessary, and on March 8, 1938 an exploratory operation was performed. It was then discovered that he had a very adherent gall bladder and the outlet of his stomach was almost totally obstructed. The gall bladder was removed, as also the stomach obstruction, and about 10 days later just before discharge from the hospital he suffered a pulmonary embolus—a blood clot lodged in the right lung. On March 30th, he returned to his home from the hospital and on April 2nd he suffered another pulmonary embolus from which he died. The death certificate was signed by Dr. Stocks and gave as the primary cause of death pulmonary

emboli, and as secondary causes fatty degeneration of the heart and chronic cholecystitis. An autopsy performed by Dr. Ogilvie led to the same conclusions. The only question in issue was as to whether the emboli were caused by or the result of the electric shock suffered December 8, 1937 or by other causes.

Dr. Stocks testified that he could not say what caused the emboli; that he did not know whether the electric shock had anything to do with it; that the shock and the inactivity of deceased thereafter might have had something to do with it; that deceased suffered from fatty degeneration of the heart; and "probably the inactivity and the anaesthetic and all that slowed down the heart and also the blood could clot in the auricle"; the infarcts or emboli would be as much or more the result of the operation than of the shock; the accident may have contributed to the death but he was not positive; after seeing the autopsy it was his opinion deceased would not have had long to live no matter what happened; the accident perhaps lowered his vitality, and so perhaps interfered with the ability of the fatty heart to carry on its usual functions. Dr. Ogilvie, who performed the autopsy, testified that he found four pulmonary emboli, two in each lung. These clots probably broke off from a larger laminated clot in the right auricular appendage. This thrombosis was undoubtedly caused by a vibrating of the auricle rather than a systematic contraction; that in his opinion this condition was caused by a fatty degeneration of the muscles on the right side of the heart; that degeneration may be caused among other things by eating too much, drinking beer, toxemias or infective processes. He found no evidence of injury to the heart from the accident; there was no evidence of trauma; that in his opinion the electric shock had no special effect on the heart; that the fatty condition of the heart of deceased had been undoubtedly existent for months. The thrombosis in the heart had undoubtedly been very recent and followed the operation. In his opinion the operation was the thing that precipitated the demise. While he could not

say absolutely, in his opinion, the accident did not contribute to the death, the probabilities that it did being very remote. Had the fibrillation of the heart been caused by the electric current there should have been some clinical evidence immediately following.

Dr. Richards testified that in his judgment electric shocks could damage the heart. The history was inadequate to decide whether it had done so in this case; that it required either a toxic condition, an infection, or an electric shock to cause this change in the heart. "I doubt whether shock was fully responsible for it"; that in his opinion the shock played some role in causing the disability. The operation was the exciting cause for the clot to form. The question is "what was the cause of the deceased heart muscle and I don't know how you could arrive at that." He thought the chronic gall bladder undoubtedly played a role. The testimony showed a condition which would have caused death even though shock were eliminated entirely. This is all the medical testimony. Several lay witnesses testified as to the kind of work deceased had been doing before the accident, some of it being strenuous, and that he did not seem to tire easily. There is also evidence that after the shock he was somewhat lethargic and lacking in his former hustle and pep. The death certificate, the hospital record of the operation and treatment, and the written detailed autopsy report were put in evidence. Such is the record.

The question before the court is whether the Industrial Commission, upon the record before it, was required as a matter of law to award compensation. In *Globe Grain & Milling Company* v. *Industrial Commission*, 57 Utah 192, 193 P. 642, 643, we stated the rule applicable here in the following language:

"This court has repeatedly held that it will not weigh the evidence, but will examine the same for the purpose only of determining whether there is any substantial competent evidence to sustain the findings or to support the award made by the commission. * * * If there is such evidence the findings will be sustained * * *."

And so it has been held in numerous cases that the decision of the Industrial Commission will not be disturbed where the evidence was such that the Commission could reasonably find or conclude that the death or disability of the employee was not the result of accidental injury arising out of or in the course of employment. *Holbrook* v. *Industrial Commission*, 92 Utah 251, 67 P. 2d 224; *Norris* v. *Industrial Commission*, 90 Utah 256, 61 P. 2d 413; *O'Brien* v. *Industrial Commission*, 90 Utah 266, 61 P. 2d 418; *Russell* v. *Industrial Commission*, 86 Utah 306, 43 P. 2d 1069; *Parker* v. *Industrial Commission*, 78 Utah 509, 5 P. 2d 573; *Banks* v. *Industrial Commission*, 74 Utah 166, 278 P. 58.

There being substantial evidence to sustain the finding of the Industrial Commission, its order denying compensation is affirmed.

MOFFAT, C. J., and McDONOUGH, PRATT, and WOLFE, JJ., concur.